LOUIS R. MILLER (Pending Admission *Pro Hac Vice*)
smiller@millerbarondess.com
DAVID W. SCHECTER (Pending Admission *Pro Hac Vice*)
dschecter@millerbarondess.com
MILLER BARONDESS, LLP
1999 Avenue of the Stars, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 552-4400
Facsimile:   (310) 552-8400

JONATHAN A. DESSAULES (Ariz. Bar No. 019439)
jdessaules@dessauleslaw.com
DESSAULES LAW GROUP
5353 N. 16th St., Suite 110
Phoenix, Arizona 85016
Telephone:   (602) 274-5400
Facsimile:   (602) 274-5401

*Attorneys for Plaintiff Anthony DeFrancesco*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Anthony T. DeFrancesco,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents; Robert C. Robbins, in his individual capacity; Michael D. Dake, in his individual capacity; AND DOES 1-10, inclusive,<br><br>Defendants. | **CASE NO.**<br><br>**COMPLAINT FOR:**<br><br>**(1) FIRST AMENDMENT RETALIATION (42 U.S.C. § 1983);**<br><br>**(2) DENIAL OF EQUAL PROTECTION (42 U.S.C. § 1983); AND**<br><br>**(3) UNLAWFUL EMPLOYMENT PRACTICES (TITLE VII, 42 U.S.C. § 2000e, *ET SEQ*.)**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Anthony T. DeFrancesco ("Plaintiff" or "DeFrancesco"), by and through his attorneys, against Defendants the Arizona Board of Regents, Dr. Robert C. Robbins, Dr. Michael D. Dake and Does 1-10, alleges in support of his Complaint as follows:

## NATURE OF THE ACTION

1. Plaintiff is an award-winning nutritionist with over two decades of experience in business administration for large health care organizations and institutions. From January 2015 to June 2019, Plaintiff served as the Senior Director of Operations at the University of Arizona Health Sciences ("UAHS").

2. This case is about Defendants' retaliation against Plaintiff in violation of the First Amendment to the United States Constitution by harassing, and ultimately terminating, Plaintiff because his husband, also a high-level University of Arizona executive, opposed and stood up to University President Robbins' decision to hire Defendant Michael D. Dake as Senior Vice President of UAHS.

3. Defendants also harassed and discriminated against Plaintiff on account of his sexual orientation—he is gay—in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Title VII of the Civil Rights Act of 1964.

## PARTIES

4. Plaintiff Anthony T. DeFrancesco ("DeFrancesco") is the former Senior Director of Operations for the University of Arizona Health Sciences ("UAHS"). DeFrancesco resided in Tucson, Arizona while he was employed at UAHS.

5. Defendant the Arizona Board of Regents (the "Regents") is the governing body of Arizona's public university system. It is headquartered in Phoenix, Arizona.

6. Defendant Dr. Robert C. Robbins ("Robbins") is, and was for all relevant periods, the President of the University. Robbins resides in Tucson, Arizona. Plaintiff sues Robbins in his individual capacity.

7. Defendant Dr. Michael D. Dake ("Dake") is employed by the University as a Senior Vice President, and in that role, Dake serves the senior-most executive at

UAHS. Dake resides in Tucson, Arizona. Plaintiff sues Dake in his individual capacity.

8. Plaintiff does not know the true names and capacities of other defendants sued herein as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of such defendants when ascertained. All references herein to the named Defendants, or any of them, include Defendants named herein as DOES.

9. Plaintiff is informed and believes, and on that basis alleges, that except as otherwise alleged, each Defendant referred to herein, including DOES 1-10, inclusive, is and at all times material herein has been, the agent, employee, partner, joint venturer, subsidiary or affiliate of each of the other Defendants and, in doing the things alleged herein, was acting within the course and scope of such position with the permission, knowledge and consent of each of the other Defendants.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 as Plaintiff's claims arise under federal law.

11. Defendants reside and/or are headquartered in Arizona and thus are subject to the jurisdiction of this Court.

12. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district and because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

13. Plaintiff has over two decades of experience in business administration for large health care organizations and institutions. Among other awards and accolades, Plaintiff has earned a board certification in healthcare management from the American College of Healthcare Executives.

### A. The University Hires Plaintiff as Senior Director of Operations

14. After serving in executive positions for more than 15 years in healthcare organizations, the University hired DeFrancesco in January 2015 to serve as the Senior

Director of Operations for the Arizona Health Sciences Center ("AHSC").[1]

15. This was a dream opportunity for DeFrancesco given his strong personal and family ties to the University. Plaintiff is a University graduate along with his father, uncle and two younger brothers, and Plaintiff's grandfather, as a retired U.S. Air Force officer, taught at the University.

16. Plaintiff relished the opportunity to make a difference at the University, and believed that he had found a place where he could finish his career.

### B. Plaintiff Assumes Responsibilities of Other Executives

17. Although hired as a Senior Director of Operations, DeFrancesco was quickly required to assume the responsibilities of other executives.

18. About two months after joining the University, the Associate Vice President of Finance and Administration, Karen Filippelli ("Filippelli"), resigned. DeFrancesco had to assume Filippelli's duties and responsibilities in addition to his own while the University searched for a replacement.

19. About two years later, in February 2017, when the Senior Associate Vice President, Mike Jonen ("Jonen"), left the University, DeFrancesco was required to assume his duties and responsibilities as well.

20. By December 2018, the University still had not hired a replacement for Filippelli. As a result, DeFrancesco had been serving as the Senior Director of Operations and the de facto Associate Vice President of Finance and Administration for UAHS for more than three years.

21. In this combined role, DeFrancesco was responsible for approving the UAHS budget (which was in excess of $1 billion) and expenditures for the colleges and research centers under the UAHS umbrella. In addition, DeFrancesco served as the functional head of human resources for the more than 500 faculty and staff employees who worked for UAHS.

---

[1] AHSC was later re-named the University of Arizona Health Sciences ("UAHS").

22. These are high-level executive functions that required significant work. De Francesco often had to work overtime and on weekends to get the work done on schedule.

23. Despite these significant demands and pressures, DeFrancesco nevertheless earned a stellar employment record. He did not receive a single complaint during his tenure.

### C. The University Fails to Promote DeFrancesco

24. DeFrancesco told University officials that it was not fair for the University to pay him as if he were only serving as the Senior Director of Operations, when in reality, he was serving a much larger role. Accordingly, DeFrancesco requested promotions and pay increases commensurate with his actual job responsibilities.

25. The University ignored his requests. Instead, DeFrancesco received modest pay increases based on his being only Senior Director of Operations.

### D. President Robbins Rigs the Search for Senior Vice President

26. In 2017, President Robbins and the University put together a search committee to find a new Senior Vice President ("SVP") to run UAHS.

27. Plaintiff's husband, Gregg Goldman ("Goldman"), was a Senior Vice President and the Chief Financial Officer for the University at the time. Goldman served as the co-chair of the search committee.

28. At President Robbins' request, the University retained an executive search firm, Russell Reynolds ("RR"), to assist the search committee. Several current and former high-ranking employees of RR are close personal friends of President Robbins. President Robbins inserted RR so that he could control the outcome of the search committee process.

29. The University received many applications for this high-level position. Dake was one of the applicants. In fact, Robbins encouraged Dake to apply for the open SVP position.

30. Dake and Robbins are both surgeons who worked together at Stanford

5

University. They became close friends and attended medical conferences, athletic events and music concerts together. According to President Robbins, Dake is his "longest, best and dearest friend."

31. It has become clear that Robbins did not only encourage his best friend to apply; he also rigged the process so that Dake would get the job.

32. The search committee operated by ranking applicants based on submitted materials and interviews conducted by committee members with the applicants. This ranking system would then be used by the search committee for purposes of eliminating the less desirable applicants.

33. At the end of the first round, Goldman reported to Robbins that Dake did poorly in the interviews with committee members and that Dake likely would not be among the finalists. President Robbins replied that he was not concerned because it was taken care of that Dake would be hired.

34. RR then tallied up the votes in secret and reported that Dake was among the five finalists. The search committee asked RR to disclose the actual vote counts, but RR refused. When pressed further, one of the RR representatives candidly admitted that the vote had turned out how President Robbins wanted.

35. The five finalists were then subjected to a more rigorous interview process. These interviews were bifurcated between interviews with a rotating smaller search committee and a separate interview with President Robbins.

36. The interviews with the smaller search committee found that Dake: (1) had little or no understanding of the academic part of the job; (2) had minimal experience running academic departments, including a questionable short tenure at another university ten years ago; (3) was abrasive, dismissive and impatient with interviewers; (4) seemed to not grasp the complexities of running a large department; (5) grossly oversimplified the challenges of the position; (6) was overconfident and lacking in substance, claiming—without mentioning specifics—that he could solve large-scale problems facing the University with "innovation"; and (7) had a

questionable past that involved allegations of unethical billing and research practices.

37. Goldman reported the results of these interviews to President Robbins. Robbins knew that Dake had, once again, done poorly in interviews with search committee members.

38. Robbins then intervened and, without feedback from the search committee, declared that Dake was among the two finalists.

39. On March 2, 2018, in a meeting to discuss the two finalists, Goldman told Robbins that hiring Dake would be the worst mistake he could make and in the end believed it could very likely cost Robbins his presidency.

40. Robbins responded: "how do I take it back, as I finally convinced him to apply and in essence have already offered him the job."

41. After sabotaging the candidacy of the other finalist, President Robbins hired Dake in March 2018 to serve as the Senior Vice President of UAHS. With the hiring of Dake, President Robbins said multiple times at multiple venues it was like he was getting the "band back together again."

### E. Dake Retaliates Against Plaintiff

42. President Robbins told Dake that Goldman had been a vocal and firm advocate against Dake. President Robbins also told Dake that Goldman's husband, DeFrancesco, was an executive in UAHS and that Dake had the authority to fire him.

43. In retaliation for his husband's protected conduct, Dake told DeFrancesco that he was fired and had to "reapply" for his job. This came as a complete shock. No one at the University had ever told DeFrancesco that his job performance was inadequate or that there was any reason for an adverse employment action.

44. Despite Dake's comments, DeFrancesco continued to be employed by the University as the Senior Director of Operations, but Dake continued to subject DeFrancesco to targeting and harassment.

45. Goldman complained to President Robbins on behalf of DeFrancesco. Robbins claimed that he would handle the problem by speaking with Dake, but the

targeting and harassment did not stop.

46. By October 2018, Goldman had left the University. On October 26, 2018, DeFrancesco met with Dake to discuss DeFrancesco's long-standing complaint that he be given a pay increase and a promotion to reflect the fact that he was serving as the de facto Associate Vice President of Finance and Administration on top of his duties as the Senior Director of Operations.

47. At that meeting, DeFrancesco reinstated his request for the University to formally recognize him as the Associate Vice President of Finance and Administration. DeFrancesco told Dake that he is qualified for the position for many reasons, including the fact that he had been successfully serving in that role for more than two years.

48. Dake told DeFrancesco at that meeting that he intended to keep the position open and continue the three-year search for a replacement for Filipelli.

49. DeFrancesco asked Dake to explain why DeFrancesco was not qualified for the position, but Dake could not come up with any specific response. Dake vaguely stated that he was looking for someone who was "strategic" and a "broad" thinker. Dake did not explain what he meant by that, and did not explain why DeFrancesco supposedly lacked those qualities.

50. In that same conversation, Dake told DeFrancesco that he has "a decision to make" now that DeFrancesco's husband had left the University. The manner, directness and tone of that statement made it clear to DeFrancesco that Dake wanted DeFrancesco to leave the University and that DeFrancesco was not welcome for as long as Dake was the head of UAHS.

51. But DeFrancesco did not want to leave the University. He wanted to continue serving the University as he had for years.

52. When DeFrancesco refused to resign, Dake orchestrated a campaign of harassment to make DeFrancesco's life miserable. For example, in meetings with high-level executives and staff, Dake would undermine DeFrancesco. Dake would ask questions to those who reported to DeFrancesco as if DeFrancesco was not in the room.

Dake would circumvent DeFrancesco by e-mailing and speaking with DeFrancesco's direct reports without informing DeFrancesco.

53. Dake's conduct was tantamount to a public expression of no confidence in DeFrancesco. This was humiliating. DeFrancesco takes pride in his work and had sacrificed considerably to support UAHS for over three years. Now, his new boss was effectively telling everyone that DeFrancesco was not a valued employee.

54. Dake's conduct was intentionally targeted to cause emotional and psychological harm such that DeFrancesco would leave the University.

### F. Dake Terminates DeFrancesco

55. After subjecting DeFrancesco to harassment for months, Dake formally terminated DeFrancesco.

56. DeFrancesco was informed that he would be terminated effective June 30, 2019. DeFrancesco was the only homosexual male at his level of seniority in UAHS who was terminated at that time.

57. This termination cannot be explained by legitimate reasons. DeFrancesco earned a stellar employment record, and he had served for over three years without any complaint.

58. Defendants continued to harass Plaintiff after he was informed that he would be terminated. It is an unwritten policy that a University official who is terminated is permitted to work from home until his or her last day. Plaintiff requested that he be treated like other officials and be allowed to work from home to assist with the transition unless it was necessary for him to come into the office.

59. Defendants refused this request, and required Plaintiff to physically come into the office when it was unnecessary to do so. The purpose of this was to embarrass and humiliate Plaintiff in front of his colleagues.

### G. Exhaustion of Administrative Remedies

60. To the extent required by law, on May 9, 2019, DeFrancesco served Defendants with a timely Notice of Claim pursuant to Arizona Revised Statutes § 12-

821.01. Defendants denied the claim thus providing Plaintiff with a right to sue in this Court.

61.   Plaintiff exhausted his administrative remedies with the United States Equal Employment Opportunity Commission ("EEOC"). On October 29, 2019, the EEOC provided Plaintiff with a "Right to Sue" letter. A copy of the letter is attached hereto as <u>Exhibit A</u>.

## FIRST CAUSE OF ACTION
## (First Amendment Retaliation (42 U.S.C. § 1983))
## (Against ROBBINS, DAKE and DOES 1-10)

62.   Plaintiff incorporates and re-alleges all of the foregoing and subsequent allegations as if fully set forth herein.

63.   42 U.S.C. § 1983 states, in relevant part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

64.   Plaintiff is a citizen of the United States. Defendants Robbins and Dake are "persons" within the meaning of section 1983 who engaged in the wrongful conduct alleged herein under color of state law.

65.   Plaintiff has a First Amendment right of association with his spouse. Plaintiff's right of association protects him from retaliation based on the protected conduct of his spouse.

66.   Defendants acted under color of State law when they violated Plaintiff's First Amendment right of association by harassing and retaliating against him because his husband exercised his First Amendment-protected right of free speech by opposing President Robbins' decision to hire Dake as Senior Vice President of UAHS.

67.   Plaintiff has suffered, and will continue to suffer, significant psychological, emotional and financial harm as a result of Defendants' wrongful

conduct, and Plaintiffs seeks damages to compensate him for that harm in an amount that will conform to proof at trial, which at this time are estimated to exceed $5 million.

68. Defendants violated Plaintiffs' rights maliciously, willfully and with reckless indifference, as such, Plaintiff is entitled to an award of punitive damages to punish and make an example of them.

69. Plaintiff is also entitled to an award of costs and attorneys' fees upon prevailing in this litigation under 42 U.S.C. § 1988.

## SECOND CAUSE OF ACTION
## (Denial of Equal Protection (42 U.S.C. § 1983))
## (Against ROBBINS, DAKE and DOES 1-10)

70. Plaintiff incorporates and re-alleges all of the foregoing and subsequent allegations as if fully set forth herein.

71. 42 U.S.C. § 1983 states, in relevant part, that: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."

72. Plaintiff is a citizen of the United States. Defendants Robbins and Dake are "persons" within the meaning of section 1983 who engaged in the wrongful conduct alleged herein under color of state law.

73. Plaintiff has a Fourteenth Amendment right to be free from discrimination on account of his sexual orientation.

74. Defendants acted under color of State law when they violated Plaintiff's Fourteenth Amendment right when they harassed and ultimately terminated him on account of his sexual orientation.

75. Plaintiff has suffered, and will continue to suffer, significant psychological, emotional and financial harm as a result of Defendants' wrongful conduct, and Plaintiffs seeks damages to compensate him for that harm in an amount

that will conform to proof at trial, which at this time is estimated to exceed $5 million.

76. Defendants violated Plaintiffs' rights maliciously, willfully and with reckless indifference, as such, Plaintiff is entitled to an award of punitive damages to punish and make an example of them.

77. Plaintiff is also entitled to an award of costs and attorneys' fees upon prevailing in this litigation under 42 U.S.C. § 1988.

## THIRD CAUSE OF ACTION
## (Discrimination in Violation of 42 U.S.C. § 2000e, *et seq.*)
## (Against the Board of Regents)

78. Plaintiff incorporates and re-alleges all of the foregoing and subsequent allegations as if fully set forth herein.

79. Title VII, 42 U.S.C. § 2000e-2(a), prohibits discriminating against and firing an employee because of such employee's sex.

80. The Regents, in its management of the affairs of the University, is an "employer" as defined by 42 U.S.C. § 2000e(b) in that it is in an industry affecting commerce and has 15 or more employees.

81. Through Title VII, Congress has abrogated sovereign immunity such that the Regents, to the extent they are a State agency or arm of the state, can be sued in this Court.

82. The Regents have committed unlawful employment practices in violation of section 2000e-2(a) through the harassment and termination of Plaintiff on account of his sex. The effect of the unlawful employment practices has been to deprive Plaintiff of his right to equal employment opportunities as is enjoyed by all persons.

83. The Regents' unlawful employment practices have caused, and will continue to cause, Plaintiff significant financial, psychological and emotional harm, and Plaintiff seeks damages to compensate him for that harm in an amount that will conform to proof at trial, but which at this time is estimated to exceed $5 million.

84. The Regents violated Plaintiffs' rights maliciously, willfully and with

reckless indifference, as such, Plaintiff is entitled to an award of punitive damages to punish and make an example of them.

85.    Plaintiff is entitled to an award of costs and reasonable attorneys' fees upon prevailing under 42 U.S.C. § 2000e-5(k).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)   grant judgment against Defendants for all claims asserted against them;

(2)   award Plaintiff compensatory damages in excess of $5 million and punitive damages as proven at trial;

(3)   award Plaintiff costs, attorneys' fees, pre- and post-judgment interest to the fullest extent permitted by law; and

(4)   award Plaintiff any further relief that the Court determines is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all claims that are so triable.

DATED: January 7, 2020                     DESSAULES LAW GROUP


By: /s/ Jonathan A. Dessaules
    Jonathan A. Dessaules
    *Local Counsel for Plaintiff Anthony DeFrancesco*


MILLER BARONDESS, LLP


By: /s/ David W. Schecter
    Louis R. Miller
    (Pending Admission *Pro Hac Vice*)
    David W. Schecter
    (Pending Admission *Pro Hac Vice*)
    *Co-Counsel for Plaintiff Anthony DeFrancesco*