COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
Telephone 602•252•8400

Daniel G. Dowd (012115)
Email: ddowd@CDQLaw.com
Rebecca van Doren (019379)
Email: rvandoren@CDQLaw.com
  Attorneys for Defendants

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony T. DeFrancesco,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>The Arizona Board of Regents; Robert C. Robbins; Michael D. Dake,<br><br>　　　　　Defendants. | Case No: 4:20-cv-00011-TUC-CKJ<br><br>**MOTION TO DISMISS COMPLAINT**<br><br>(Assigned to the Honorable Cindy K. Jorgenson)<br><br>**(Oral Argument Requested)** |

Plaintiff Anthony T. DeFrancesco filed this lawsuit against ABOR, University of Arizona ("UA" or "University") President Robert C. Robbins, M.D., and UA Senior Vice President Michael Dake, M.D., alleging that Plaintiff was harassed and terminated from his position as the Senior Director of Operations for the University of Arizona Health Sciences ("UAHS"): (i) in retaliation for statements made by Plaintiff's husband, Gregg Goldman, in connection with UA's decision to hire Dr. Dake; and (ii) because of Plaintiff's sexual orientation. The Complaint must be dismissed as it fails to state a claim for several independently dispositive reasons. First, the Complaint does not allege, or even attempt to allege, any actionable conduct by President Robbins. Second, the Complaint does not plausibly allege that Plaintiff's sexual orientation was the motivation for the alleged harassment or for terminating Plaintiff's employment. Third, qualified immunity protects Defendants Robbins and Dake because the "intimate association" right Plaintiff asserts is not clearly established. Finally, while ABOR and UA policy prohibit discrimination of any kind, Title VII of the Civil Rights Act of 1964 does not address sexual orientation discrimination.[1]

I.   **Motion To Dismiss Standard.**

A Rule 12(b)(6) motion to dismiss for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *See Zabriskie v. Fed. Nat. Mortg. Ass'n*, 109 F. Supp. 3d 1178, 1181 (D. Ariz. 2014). Rule 12(b)(6) serves the important role of eliminating early in the case causes of action that are flawed in their legal or factual premises and sparing "litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). *See also Sparlin v. Countrywide Home Loans*, 2011 WL 13120819, at *2 (D. Ariz. Sept. 6, 2011) ("The purpose of Rule 12(b)(6), Fed. R. Civ. P., is to allow the court to eliminate actions that are fatally flawed.") (quotations omitted). These salient purposes are served by dismissing the Complaint at this juncture before the State is

---

[1] In accordance with LRCiv. 12.1(c), Defendants conferred with Plaintiff prior to filing this Motion, as set forth in the contemporaneously-filed Certification of Conferral.

1

needlessly forced to incur the costs and distraction of litigating Plaintiff's fundamentally flawed claims.

## II. The Complaint Does Not Allege Facts Stating A Plausible Claim Against President Robbins.

In *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the United States Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (Quotation omitted). A claim is considered plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Ninth Circuit has further explained that dismissal under Fed. R. Civ. P. 12(b)(6) can be based on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). *See also Hargrave v. Univ. of Washington*, 2014 WL 2619148, at *3 (W.D. Wash. June 12, 2014) ("To cross the line from conceivable to plausible, a complaint must contain a sufficient quantum of 'factual matter' alleged with a sufficient level of specificity to raise entitlement to relief above the speculative level.") (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Applying these standards to Plaintiff's allegations against President Robbins reveals that they fail and must be dismissed.

Plaintiff alleges that Defendant Michael Dake harassed and terminated Plaintiff from his employment at the University in retaliation for Plaintiff's husband's opposition to President Robbins' decision to hire Dr. Dake, and because of Plaintiff's sexual orientation. [Complaint (Doc. 1), ¶¶ 66, 74, 82.] Based on these allegations, Plaintiff asserts two Section 1983 claims against Dr. Dake and President Robbins. However, the Complaint does not allege that President Robbins engaged in a single act constituting the alleged retaliation, harassment, and discrimination that are the foundation of Plaintiff's claims. Nearly every factual allegation about President Robbins describes conduct by the President in connection with the University's hiring of Dr. Dake. [*See* Complaint, ¶¶ 26-41.] Plaintiff does not (and truthfully could not) allege that Plaintiff's rights were violated in Dr. Dake's hiring process.

Plaintiff's allegations concerning President Robbins do not assert discrimination or retaliation against Plaintiff; rather, they merely describe the events (Dake's hiring) about which Plaintiff's husband, Gregg Goldman, allegedly complained.

Plaintiff's actual claims are based on alleged discrimination occurring only <u>after</u> Dr. Dake was hired, specifically that Dr. Dake, <u>not</u> President Robbins, harassed him:

> 43. In retaliation for his husband's protected conduct, **Dake** told DeFrancesco that he was fired and had to "reapply" for his job.
>
> 44. Despite Dake's comments, DeFrancesco continued to be employed by the University as the Senior Director of Operations, but **Dake** continued to subject DeFrancesco to targeting and harassment.
>
> 50. … Dake told DeFrancesco that he has "a decision to make" now that DeFrancesco's husband had left the University. The manner, directness and tone of that statement made it clear to DeFrancesco that **Dake wanted DeFrancesco to leave** the University and that DeFrancesco was not welcome for as long as Dake was the head of UAHS.
>
> 52. When DeFrancesco refused to resign, **Dake orchestrated a campaign of harassment** to make DeFrancesco's life miserable. For example, in meetings with high-level executives and staff, **Dake** would undermine DeFrancesco. **Dake** would ask questions to those who reported to DeFrancesco as if DeFrancesco was not in the room.
>
> 53. **Dake's conduct** was tantamount to a public expression of no confidence in DeFrancesco. This was humiliating. DeFrancesco takes pride in his work and had sacrificed considerably to support UAHS for over three years. Now, his new boss was effectively telling everyone that DeFrancesco was not a valued employee.
>
> 54. **Dake's conduct** was intentionally targeted to cause emotional and psychological harm such that DeFrancesco would leave the University.

[Complaint (Doc. 1) (emphasis added).] Plaintiff further alleges that he was terminated by Dr. Dake, not by President Robbins. [Complaint, ¶ 55 ("After subjecting DeFrancesco to harassment for months, **Dake** formally terminated DeFrancesco.") (emphasis added).]² 

As Plaintiff has not alleged facts giving rise to an actionable claim against President Robbins, the two claims against him must be dismissed. *See Lewallen v. Home Depot USA, Inc.*,

---

² Plaintiff's sole reference to President Robbins in this section is that Mr. Goldman complained about Dr. Dake's treatment of Plaintiff to President Robbins. [Complaint (Doc. 1), ¶ 45.] That allegation does not plausibly demonstrate that President Robbins took any adverse action that could support Plaintiff's claims against him.

3

2012 WL 3002512, at *3 (D. Ariz. July 23, 2012) (dismissing Title VII claim where plaintiff did not allege "specific facts" supporting claim that supervisors retaliated against her); *Huskey v. Ahlin*, 2010 WL 5113059, at *4 (E.D. Cal. Dec. 9, 2010) (dismissing Section 1983 claim where factual allegations were insufficient to demonstrate a "causal link" between the defendant's actions and the plaintiff's constitutional rights).  *See also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[3]

### III. The Second And Third Causes Of Action Must Be Dismissed:  The Complaint Does Not Allege Facts Stating A Plausible Claim Of Discrimination Based On Sexual Orientation.

To state an equal protection claim under 42 U.S.C. § 1983, "Plaintiffs must **allege facts plausibly showing** that 'the defendants acted with an intent or purpose to discriminate against [plaintiffs] based upon membership in a protected class.'" *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (*quoting Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)) (emphasis added).  Similarly, a Title VII discrimination claim must include "sufficient facts to show that [plaintiff] was subject to adverse employment actions due to a protected activity or status under Title VII."  *Garcia v. Honeywell Int'l, Inc.*, 591 F. App'x 527, 527 (9th Cir. 2015)).  The Complaint is devoid of the factual content necessary to make a claim for discrimination based on sexual orientation under either Section 1983 or Title VII "plausible on its face."  *Iqbal*, 556 U.S. at 678.

The Complaint does not set forth any facts alleging that either President Robbins or Dr. Dake took adverse action against Plaintiff because of his sexual orientation, or that they had any discriminatory intent, purpose, or motivation.  Rather, the Complaint focuses on Plaintiff's allegations that: 1) President Robbins wanted to hire Dr. Dake and steered the hiring process to ensure that he was hired; 2) Plaintiff's husband, Mr. Goldman, opposed the hiring of Dr. Dake and told President Robbins of his opposition; 3) after Dr. Dake was

---

[3] Plaintiffs' bare use of the plural term "Defendants" in his first two claims for relief do not salvage the claims against President Robbins.  Plaintiff offers no factual content permitting the Court to draw the reasonable inference that President Robbins is liable for the alleged misconduct.  *See Iqbal*, 556 U.S. at 678.

4

hired, he denied Plaintiff's request for a promotion, began to "harass" Plaintiff, and threatened him with dismissal; and 4) Dr. Dake terminated Plaintiff.  Clearly, the allegations are that Plaintiff was harassed and terminated in retaliation for statements made by Mr. Goldman, not because of Plaintiff's sexual orientation.

The sole allegation in the Complaint attempting to link Plaintiff's sexual orientation to his termination is that "DeFrancesco was the only homosexual male at his level of seniority in UAHS who was terminated at that time."  [Complaint (Doc. 1), ¶ 55.]  This assertion does not compensate for the absence of facts related to discrimination.  Even combining this assertion with Plaintiff's conclusory allegation that Defendants "harassed and ultimately terminated him on account of his sexual orientation" [Complaint, ¶ 74], the Complaint fails to state a plausible claim of discrimination because of sexual orientation.  This Court does "not accept legal conclusions in the complaint as true, even if 'cast in the form of factual allegations.'"  *Lacano Investments, LLC v. Balash,* 765 F.3d 1068, 1071 (9th Cir. 2014) (*quoting Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009)).  *See also In re VeriFone Sec. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993) ("Conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). Plaintiff's discrimination and equal protection claims amount to nothing more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Rather than offering facts stating a plausible claim, Plaintiff's equal protection and Title VII causes of action are based solely on the false syllogism that: 1) Plaintiff is gay; 2) Plaintiff was allegedly harassed and then terminated; and therefore 3) the harassment and termination were motivated by Plaintiff's sexual orientation.  [*See* Complaint (Doc. 1), ¶¶ 55, 56, 74.]  Whether deemed conclusory allegations or unwarranted inferences (or both), these allegations do not state a claim for relief.  *See Wiley v. Plattsburgh*, 407 F. Supp. 3d 119, 129 (N.D.N.Y. 2019) (dismissing discrimination claim where allegations "boil down to a classic false syllogism that fails to support an inference of discrimination: 'I am (fill in the protected class of which the plaintiff is a member); something bad happened to me …; therefore the bad thing happened because I am (fill in the protected class).'").  *See also Sherrill v. Blank*,

5

2013 WL 11312398, at *2 (D. Ariz. Nov. 26, 2013) (dismissing Title VII claim where "Plaintiff does not provide sufficient facts to show that her termination was based on her gender, as opposed to some legitimate business interest."); *Dallas & Lashmi, Inc. v. 7-Eleven, Inc.*, 112 F. Supp. 3d 1048, 1063 (C.D. Cal. 2015) (dismissing discrimination claim that "rests entirely on conclusory allegations without providing necessary details or supporting facts"). The equal protection and Title VII claims should therefore be dismissed.

### IV. The First Cause Of Action Must Be Dismissed: Qualified Immunity Protects Defendants From Liability On Plaintiff's First Amendment Retaliation Claim.

#### A. The Doctrine of Qualified Immunity.

The federal doctrine of qualified immunity protects public employees in their individual capacities from suit under Section 1983 unless the facts alleged demonstrate that the employee's conduct violated a clearly established constitutional or statutory right. *See, e.g., Todd v. United States*, 849 F.2d 365, 371 (9th Cir. 1988) (holding that because defendants did not violate plaintiff's "clearly established First or Fifth Amendment right," defendants were immune from suit). The U.S. Supreme Court has explained, "[a] Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (alterations in original). The "statutory or constitutional question" must be "beyond debate." *Id.* Moreover, the "inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (quotations omitted). Courts must be "careful … to apply the 'clearly established' rule in such a way that faithfully guards the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Mattos v. Agarano*, 661 F.3d 433, 442 (9th Cir. 2011) (internal quotations omitted). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix*, 136 S.Ct. at 308 (quotations omitted).

6

President Robbins and Dr. Dake are protected by qualified immunity unless this Court determines that binding precedent from the Ninth Circuit or the United States Supreme Court makes clear that the conduct in which these defendants allegedly engaged violated the specific right asserted by Plaintiff. *See Lum v. Jensen*, 876 F.2d 1385, 1387 (9th Cir. 1989). *See also Brosseau v. Haugen*, 543 U.S. 194, 201 (2004) (holding that qualified immunity applies unless binding case law "squarely governs the case here"). Where no binding precedent exists and the other circuits are split, the purported right is not clearly established, and the defendants are entitled to qualified immunity. *See Lum* at 1389 ("In our view, the absence of binding precedent in this circuit plus the conflict between the circuits is sufficient, under the circumstances of this case, to undermine the clearly established nature of a right. Though they are charged with knowledge of constitutional developments, government officials are not required to predict the future course of constitutional law."). Further, courts are appropriately required to resolve qualified immunity questions "at the earliest possible stage in litigation." *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (*quoting Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

### B. Plaintiff's First Amendment Retaliation Claim Does Not Arise From A Clearly Established Right.

Plaintiff alleges that he "has a First Amendment right of association with his spouse" that "protects him from retaliation based on the protected conduct of his spouse." [Complaint (Doc. 1), ¶ 65.] However, no binding authority in the Ninth Circuit or from the United States Supreme Court recognizes the specific right that Plaintiff seeks to assert here, and the other circuits are split on this issue. Thus, no reasonable official in Dr. Dake's position (recall that there are no allegations against President Robbins) would have understood that taking adverse action against Plaintiff, who was married to a person who had previously been critical of Dr. Dake's hiring, would somehow violate Plaintiff's right of intimate association.

The Ninth Circuit has never held that a right of intimate association exists under the First Amendment, let alone that such a right could be violated under the circumstances

7

described in the Complaint. Accordingly, there is no clearly established law that would have given Dr. Dake "fair notice" that the alleged actions violated Plaintiff's rights under the First Amendment. *See Chappell v. Mandeville*, 706 F.3d 1052, 1057 (9th Cir. 2013) (granting qualified immunity where "the law was not clearly established on either of Chappell's claims … such that [defendants] would have had fair notice that their actions were unconstitutional.").

The reality that the Ninth Circuit has not definitively spoken on this issue is demonstrated by the varied and disparate outcomes in analogous cases from multiple district courts in this Circuit. In *Gavin v. City of Los Angeles*, 2007 WL 9706236 (C.D. Cal. 2007), for example, the plaintiffs were a husband and wife who both worked for the Los Angeles Police Department. The wife alleged that she had been subjected to adverse action because of her husband's conduct in an internal affairs investigation, and she asserted a cause of action for "freedom of association." *Id.* at *9. The wife argued that the claim arose under the First Amendment. The district court disagreed, finding "no First Amendment basis" for the claim. In doing so, the *Gavin* court rejected the reasoning of other courts, including the Second Circuit in *Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999)). Similarly, in *Melcher v. City of San Luis*, 2008 WL 691853, at *7 (D. Ariz. Mar. 12, 2008), *aff'd*, 334 F. App'x 121 (9th Cir. 2009), the plaintiff alleged that the city council terminated her employment because her mother was a political opponent, thus interfering in her right of intimate association with her mother. The court rejected the assertion, stating that such a claim would be cognizable only if plaintiff alleged and proved "direct and substantial" or "significant" interference with her associational rights. *Id.*

Other courts in this Circuit have acknowledged a cognizable claim based on the right of intimate association. In *Isakhanova v. Muniz*, 2016 WL 1640649 (N.D. Cal. 2016), for example, the plaintiff was allegedly mistreated after visiting her son in prison and told that if she complained, she would never see her son again. She alleged that these actions violated her right of intimate association because they were done in retaliation for her son having filed prison group grievances. The district court cited *Adler* as supporting a cause of action

8

under the First Amendment "where an individual has suffered retaliation for his or her perceived association with the speech of a close family member." *Id.* at *4. Similarly, district courts in *Gray v. Bruneau-Grand View Sch. Dist. No. 365*, 2007 WL 1381785, at *1 (D. Idaho Mar. 27, 2007), and *Roberts v. Ferry Cty.*, 2008 WL 5121606, at *5 (E.D. Wash. Dec. 5, 2008), cited *Adler* to support their analyses of alleged adverse action done in retaliation for the conduct of the plaintiff's spouse as a claimed violation of the "First Amendment right of intimate association." The Ninth Circuit has not addressed this issue or reconciled these inconsistencies, and no Arizona district court has adopted *Adler* as persuasive. This reality is dispositive and defeats the "clearly established" requirement of the qualified immunity analysis.

Courts <u>outside</u> the Ninth Circuit similarly vary on the source of the right to intimate association, the elements of a claim for an alleged breach of the right, or whether a plaintiff can allege a violation of the right of "intimate association" based on conduct alleged to be in retaliation for the acts of another person. For example, the Second Circuit in *Adler* stated that such a claim "should be analyzed as a claimed violation of a First Amendment right of intimate association." *Adler v. Pataki*, 185 F.3d at 44. However, *Adler* also recognized substantial uncertainties associated with such a claim, finding that the source of the right of intimate association "has not been authoritatively determined," and that the "standard applied in determining whether that right has been violated" has varied among courts. *Id.* at 42-43.

The Sixth Circuit Court of Appeals in *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, 982 F.2d 952, 955 (6th Cir. 1993), reversed the district court's dismissal of the plaintiff's claim that she had been terminated in retaliation for the conduct of her husband, who was also her supervisor. The court stated that the plaintiff "had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association."

Conversely, the Tenth Circuit Court of Appeals rejected the generalized approach adopted by the *Adler* court and held that "an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim

9

under section 1983." *Trujillo v. Bd. of Cty. Comm'rs of Santa Fe Cty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). The Seventh Circuit in *Christensen v. Cty. of Boone, IL*, 483 F.3d 454, 463 (7th Cir. 2007), analyzed the right of intimate association under the substantive component of the Fourteenth Amendment's due process clause, and noted that the right is violated only where the defendant "directly" and "substantially" interfered with the relationship. The Court also added another element, holding that conduct targeted at the right of intimate association violates the substantive due process clause only if it "shocks the conscience." *Id.* at 464 (*quoting Russ v. Watts*, 414 F.3d 783, 789 (7th Cir. 2005)). Finally, in *Singleton v. Cecil*, 133 F.3d 631, 635 (8th Cir. 1998) (*affirmed on this point,* 176 F.3d 419 (8th Cir. 1999)), the Eighth Circuit analyzed a claim that plaintiff was terminated in retaliation for his wife's recorded statement threatening to frame the police chief. The Court rejected the claim because the plaintiff "presented no evidence that his termination 'significantly discouraged, let alone made practically impossible,' his marriage" to his wife, or that the defendant acted with the goal of poisoning the marriage. *Id.* (*quoting Zablocki v. Redhail*, 434 U.S. 374, 387, n.12 (1977)).

The nature of the suggested right of intimate association, including its source and the specific circumstances required for it to be violated, are clearly unsettled, not clearly established. As a result, multiple courts have applied qualified immunity to protect defendants where the right has been asserted. *See Gaines v. Wardynski*, 871 F.3d 1203, 1214 (11th Cir. 2017) (granting summary judgment in favor of defendant on qualified immunity grounds because "[i]n the absence of any controlling case involving that situation on sufficiently similar facts, Dr. Wardynski did not have notice and 'fair warning' that he was violating Gaines's right to freedom of intimate association" by taking adverse action against plaintiff because her father had engaged in protected speech); *Crystal Freeman v. Cty. of Riverside*, 2019 WL 7905733, at *5 (C.D. Cal. Apr. 5, 2019) (applying qualified immunity where plaintiff argued it was "merely 'likely'" the Ninth Circuit would adopt the same interpretation of the right of intimate association as had the Second and Sixth Circuits); *Vigil v. Tweed*, 2019 WL 2411740 at *12 (D.N.M. 2019) ("In sum, *Adler* is not sufficient to clearly establish a general right under the First Amendment to be free of retaliation based upon the

conduct of a family member."); *DeSoto v. McKay*, 2016 WL 7049404, at *6 (D. Ariz. Dec. 5, 2016), ("As with the right to privacy, the Supreme Court and Ninth Circuit have not definitively prescribed the extent of constitutional protections for abridgements of the right to intimate association within public employment."); *Starling v. Bd. of Cty. Comm'rs*, 2009 WL 281051, at *8 (S.D. Fla. Feb. 2, 2009), *aff'd*, 602 F.3d 1257 (11th Cir. 2010) ("[T]he contours of the asserted right of intimate association were not so clearly established at the time of the alleged violation that a reasonable person in Fischer's position would have known that his challenged conduct was illegal."); *Anderson-Free v. Steptoe*, 970 F. Supp. 945, 961 (M.D. Ala. 1997) ("In the instant action, Free has failed to point to any case whatsoever that permits an individual to bring a free speech claim based on retaliation directed towards that individual's spouse.").

Given the absence of clearly established law in the Ninth Circuit (and other circuits) supporting Plaintiff's First Amendment Retaliation claim based on the alleged violation of his right of intimate association, President Robbins and Dr. Dake are entitled to qualified immunity on that claim.

## V. The Third Cause of Action Must Be Dismissed: The Ninth Circuit Has Not Extended The Protections Of Title VII To Prohibit Discrimination On The Basis Of Sexual Orientation.

The Arizona Board of Regents and the universities it governs are committed to creating and maintaining an environment free from discrimination and protecting the rights and dignity of all members of the university communities, including faculty, staff, administrators and students. ABOR Policy expressly prohibits discrimination on the basis of any protected status, including sexual orientation. [*See* ABOR Policy 1-119.][4]  Similarly, the University's Nondiscrimination and Anti-Harassment Policy provides:

> [T]he University prohibits discrimination, including harassment and retaliation, based on a protected classification, including race, color, religion, sex, national origin, age, disability, veteran status, sexual orientation, gender identity, or genetic information.

---

[4] This policy is available online at https://public.azregents.edu/Policy%20Manual/1-119-Nondiscrimination%20and%20Anti-Harassment.pdf

11

[Policy HR-200E.][5]  Further, the University provides detailed procedures for all employees to report incidents possibly violating its Nondiscrimination and Anti-Harassment Policy:

> The University encourages anyone who believes he or she has been the subject of discrimination to report the matter immediately as described in the section below, "Reporting Discrimination, Harassment, or Retaliation." All members of the University community are responsible for participating in creating a **campus environment free from all forms of prohibited discrimination** and for cooperating with University officials who investigate allegations of policy violations.

[*Id.*]  However, the Ninth Circuit has not progressed this far, and has held that Title VII does not address sexual orientation.[6]

> Title VII provides:
>
> It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;

42 U.S.C.A. § 2000e-2.  In *DeSantis v. Pacific Tel. & Tel. Co.*, 608 F.2d 327 (9th Cir. 1979), the Ninth Circuit held that "Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality." 608 F.2d at 329–30.  Although another section of the *DeSantis* decision addressing gender stereotypes has been overturned, *see Nichols v. Azteca Restaurant Enterprises, Inc.*, 256 F.3d 864, 875 (9th Cir. 2001), the holding that Title VII does not apply to sexual orientation has been left undisturbed.

The Ninth Circuit had the opportunity to revisit its position on this issue in 2002, but declined to do so. *See Rene v. MGM Grand Hotel, Inc.*, 305 F.3d 1061 (9th Cir. 2002).  In *Rene,*

---

[5] This policy is available online at: https://policy.arizona.edu/human-resources/nondiscrimination-and-anti-harassment-policy. *See also* The University of Arizona Office of Institutional Equity Procedures for Investigating Complaints and Conducting Administrative Reviews, available online at https://equity.arizona.edu/sites/default/files/OIE-Procedures.pdf

[6] ABOR vehemently denies Plaintiff suffered any form of discrimination.  However, even accepting Plaintiff's allegations and conclusory averments as true, he has not stated a plausible claim under Title VII.

the plaintiff alleged that he was subjected to persistent and severe sexual harassment because he was gay. 305 F.3d at 1064. The district court granted summary judgment for the defendant because "Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and is not extended to include discrimination based on sexual preference." *Id.* (quotations and alterations omitted). On appeal, the panel was split, with four of ten judges joining the plurality opinion, and two additional judges concurring in the result. This majority reversed the grant of summary judgment. The plurality opinion concluded that "an employee's sexual orientation is irrelevant for purposes of Title VII. It neither provides nor precludes a cause of action for sexual harassment." *Id.* at 1063. The plurality further explained that "Title VII prohibits offensive 'physical conduct of a sexual nature' when that conduct is sufficiently severe or pervasive. It prohibits such conduct without regard to whether the perpetrator and the victim are of the same or different genders. And it prohibits such conduct without regard to the sexual orientation-real or perceived-of the victim." *Id.* at 1068 (citations omitted). The focus was on the nature of the actionable conduct, <u>not</u> the status of the plaintiff. Thus, the plurality found it unnecessary to address whether Title VII applied to alleged discrimination based on sexual orientation because it was enough in that specific case that the plaintiff was subjected to "sufficiently severe or pervasive" "physical conduct of a sexual nature."[7] As *Rene* did not overturn, either explicitly or implicitly, the Ninth Circuit's prior holding that Title VII does not extend to sexual orientation, *DeSantis* remains good law on that issue.[8]

Recent federal court decisions confirm that *DeSantis* reflects the Ninth Circuit's current interpretation of Title VII. *See, e.g., Bostock v. Clayton Cty.*, 2016 WL 9753356, at *3,

---

[7] In this action, unlike *Rene*, Plaintiff makes no allegation that Defendants' conduct was physical or of a sexual nature.
[8] This conclusion is buttressed by the dissenting opinion in *Rene*, which argued that "Rene's lawsuit was brought solely on the basis that he was harassed in the workplace because of his sexual orientation, which is not actionable under Title VII of the Civil Rights Act; therefore the summary judgment was properly entered." *Rene* at 1078 (J. Hug, dissenting). One judge concurred in the result, agreeing that the case could be handled on different grounds, but wrote separately to note her agreement with the dissent that "Title VII does not protect employees from discrimination because of sexual orientation …." *Id.* at 1070 (J. Graber, concurring).

13

n.3 (N.D. Ga. Nov. 3, 2016), *aff'd sub nom. Bostock v. Clayton Cty. Bd. of Commissioners*, 723 F. App'x 964 (11th Cir. 2018) ("[T]hat portion of *DeSantis* holding that 'Title VII's prohibition of 'sex' discrimination applies only to discrimination on the basis of gender and should not be judicially extended to include sexual preference such as homosexuality[,]' remains undisturbed."); *Fox v. Shinseki*, 2013 WL 4034086, at *7 (N.D. Cal. Aug. 6, 2013) ("[D]iscrimination based on sexual orientation alone, unlike gender, is not actionable under Title VII.") (*citing DeSantis*); *Kindinger v. Boulder Station, Inc.*, 2007 WL 1796247, at *3 (D. Nev. June 19, 2007) (citing *DeSantis* for the proposition that "Title VII, unlike Nevada's anti-discrimination law, does not prohibit discrimination based on sexual orientation."). Recent decisions from Arizona District Court have also held that Title VII does not prohibit discrimination on the basis of sexual orientation. *See Farber v. City of Mesa*, 2011 WL 13183229 at *2 (D. Ariz. 2011) ("Title VII does not prohibit discrimination because of sexual orientation.") (*citing Rene*, 305 F.3d 1063); *Hogan v. Anasazi Foundation*, 2010 WL 2348630 at *3 (D. Ariz. 2010) ("Title VII does not protect against discrimination on the basis of sexual orientation."). Accordingly, this Court must dismiss Plaintiff's Title VII claim, which is entirely based on his claim of sexual orientation discrimination. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) ("Under our 'law of the circuit doctrine,' a published decision of this court constitutes binding authority 'which must be followed unless and until overruled by a body competent to do so.'") (*quoting Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012)).

**VI.** **Conclusion.**

Plaintiff asserts three claims in his Complaint: 1) First Amendment Retaliation under 42 U.S.C. § 1983 against President Robbins and Dr. Dake; 2) Equal Protection under 42 U.S.C. § 1983 against President Robbins and Dr. Dake; and 3) Title VII sexual orientation discrimination against ABOR. Each claim fails. Plaintiff alleges no actionable conduct by President Robbins, which defeats any claim against him. Plaintiff does not plead any facts plausibly showing that the adverse employment action was motivated by his sexual orientation, which defeats his equal protection and Title VII claims. The alleged First

14

Amendment right of intimate association is unsettled, and certainly not clearly established, which compels dismissal of the First Amendment Retaliation claim based on qualified immunity. Finally, in the Ninth Circuit, Title VII does not apply to Plaintiff's discrimination claim based on his sexual orientation. The purpose of Rule 12(b)(6) can be served only by dismissal of the Complaint.

Defendants respectfully request an award of their fees pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e–5(k).

RESPECTFULLY SUBMITTED this 19th day of February, 2020.

COHEN DOWD QUIGLEY
The Camelback Esplanade One
2425 East Camelback Road, Suite 1100
Phoenix, Arizona 85016
   Attorneys for Defendants

By:   */s/ Daniel G. Dowd*
      Daniel G. Dowd
      Rebecca van Doren

15