WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony T DeFrancesco,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-20-00011-TUC-CKJ<br><br>**ORDER** |

Before the Court is Defendants' Arizona Board of Regents, Dr. Robert Robbins, and Dr. Michael Dake, Motion to Dismiss Complaint (Doc. 16).  For the following reasons, Defendants' Motion is GRANTED IN PART AND DENIED IN PART.  Plaintiff's First Amendment retaliation and freedom of association claims are dismissed with prejudice. Plaintiff's equal protection and Title VII claims are dismissed without prejudice.  The Court allows Plaintiff thirty days to file an amended complaint.

## BACKGROUND[1]

In January 2015, Plaintiff Anthony DeFrancesco was hired as the Senior Director of Operations for the University of Arizona Health Sciences ("UAHS").  (Doc. 1, ¶ 14). Later that year, Plaintiff also assumed the duties of the Associate Vice President of Finance and Administration ("AVP") when the former AVP resigned. *Id.* ¶ 18. By December 2018,

---

[1] In analyzing this motion, the Court takes all allegations of material fact as true and construes them in the light most favorable to Plaintiff.

the University had yet to hire a replacement for the former AVP and Plaintiff was still performing the duties of that role. *Id.* ¶ 20. Plaintiff alleges he did not receive a single complaint during his tenure at the University. *Id.* ¶ 23.

In 2017, Dr. Robbins, the president of the University of Arizona, put together a search committee to find a new Senior Vice President to run UAHS. *Id.* ¶ 26. At the time, Plaintiff's husband was a Senior Vice President and the Chief Financial Officer for the University and was the co-chair of the search committee. *Id.* ¶ 27.

Plaintiff alleges that Dr. Robbins rigged the hiring process so that Dr. Dake, Robbins' best friend, would get the job as Senior Vice President. *Id.* ¶ 31. Plaintiff also contends that his husband informed Dr. Robbins that Dr. Dake did poorly in his job interviews and would not be among the finalists for the position. *Id.* ¶ 33. Plaintiff states that his husband told Dr. Robbins that if he were to hire Dr. Dake, it would be the worst mistake he could make and would very likely cost him his presidency. *Id.* ¶ 39.

In March 2018, despite the warnings, Dr. Robbins hired Dr. Dake and allegedly informed him that Plaintiff's husband had been a vocal advocate against his candidacy. *Id.* ¶ 42. Dr. Robbins also allegedly told Dr. Dake that, as Senior Vice President over UAHS, he had the authority to fire Plaintiff. *Id.*

By October 2018, Plaintiff's husband had voluntarily left the University, and on October 26, 2018, Plaintiff met with Dr. Dake to discuss Plaintiff's longstanding complaint that he be given a pay increase and promotion to reflect the fact that he was serving as the AVP of Finance and Administration in addition to his other duties. *Id.* ¶ 46. At the meeting, Plaintiff requested to be formally recognized as the AVP since he had been successfully completing the tasks of that position for more than two years. *Id.* ¶ 47. Dr. Dake demurred and said he would keep the position open, as he was looking for someone who was "strategic" and a "broad' thinker." *Id.* ¶¶ 48, 49. During the conversation, Dr. Dake also allegedly threatened Plaintiff by informing him that now that Plaintiff's husband had left the University, he had "a decision to make." *Id.* ¶ 50. Plaintiff alleges that Dr. Dake's tone made it clear that he was not welcome at the University while Dake was Senior

Vice President over the department. *Id.*

Plaintiff insinuates that he was asked to resign at or after his October 26th meeting with Dr. Dake. *Id.* ¶¶ 50-52. He asserts that when he refused to resign, Dake orchestrated a campaign of harassment to make his life miserable. *Id.* ¶ 52. The alleged harassment included undermining Plaintiff in meetings; asking questions to Plaintiff's subordinates in Plaintiff's presence, as if Plaintiff were not there; and communicating with Plaintiff's subordinates without Plaintiff's knowledge. *Id.* Plaintiff asserts he was humiliated by this conduct. *Id.* ¶ 53.

On June 30, 2019, Dr. Dake terminated Plaintiff, making Plaintiff "the only homosexual male at his level of seniority in UAHS who was terminated at that time." *Id.* ¶¶ 55, 56.

## PROCEDURAL HISTORY

On February 19, 2020, Defendants' filed their Motion to Dismiss Complaint. (Doc. 16) On March 4, 2020, Plaintiff filed his response (Doc. 17); and on March 23, 2020, Defendants filed their reply (Doc. 20). On June 18, 2020, with the Court's permission, Plaintiff filed his sur-reply to Defendants' reply (Doc. 25); and on June 25, 2020, Defendants filed their response to the sur-reply (Doc. 27). On July 14, 2020, the Court held oral arguments on Defendants' Motion to Dismiss and took the matter under advisement. (Minute Entry 07/14/2020) This Order follows.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can move for dismissal of a complaint for failure to state a claim upon which relief can be granted. Dismissal is appropriate when the complaint fails to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a

1 defendant has acted unlawfully." *Id.* (quotation marks and citation omitted).

2 "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Turner v. City and Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quotation marks and citation omitted). Not only must a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" its "factual allegations . . . must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (citation omitted). Furthermore, a plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim. *Weisbuch v. Cnty. of L.A.,* 119 F.3d 778, 783 n.1 (9th Cir. 1997). If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990).

## ANALYSIS

Plaintiff outlines three causes of action against Defendants in his complaint: (i) a First Amendment retaliation claim against Dr. Robbins and Dr. Dake in their individual capacities; (ii) an Equal Protection claim also against Dr. Robbins and Dr. Dake in their individual capacities; and (iii) an employment discrimination claim under Title VII of the Civil Rights Act of 1964 against the Arizona Board of Regents.

Plaintiff's constitutional claims arise under 42 U.S.C. § 1983. Section 1983 holds any person liable who, under color of any statute, deprives any citizen of any rights, privileges, or immunities secured by the Constitution and laws of the United States.

42 U.S.C.A. § 1983 (West).  Section 1983 does not create any substantive rights, "it merely provides remedies for deprivations of rights established elsewhere." *Okla. City v. Tuttle*, 471 U.S. 808, 816, (1985) (citation omitted).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48, (1988) (citation omitted).  The parties disagree whether Plaintiff has sufficiently alleged clearly defined constitutional rights and, if he has, whether his allegations demonstrate Defendants violated them.

## I.     Constitutional Violations

The gravamen of Plaintiff's complaint is the assertion that he was terminated because of the protected conduct of his husband in violation of the First Amendment.  (Doc. 1, ¶¶ 43, 65-66)  In subsequent motions and during oral arguments on the matter, Plaintiff clarified that his First Amendment claim constitutes "a case where [he] alleges retaliation because of the First Amendment-protected speech of his spouse." (Doc. 17 at 7)  Plaintiff also declared that his First Amendment claim was only "a free speech retaliation claim" (oral arguments), and that his suit in general was "not a right of intimate association case" (oral arguments).  In Defendants' Motion to Dismiss, Defendants argue they are shielded from suit by the doctrine of qualified immunity, as Plaintiff's retaliation claim does not arise from a clearly established right.  (Doc. 16 at 6-11)  They also argue that, even if they are unprotected by qualified immunity, Plaintiff's complaint fails to state claims upon which relief can be granted.  *Id.* at 1-6.

While Plaintiff rejects the implication that his First Amendment retaliation claim is connected to a freedom of association claim, the Court finds otherwise.  At the very least, Plaintiff's claim of First Amendment retaliation is intertwined with his right to freedom of association.  Notwithstanding this fact, both claims fail.  Plaintiff fails to demonstrate his husband spoke as a private citizen on a matter of public concern, and as such, Defendants' Motion to Dismiss his First Amendment retaliation claim is granted. Additionally, Defendants are entitled to qualified immunity on Plaintiff's freedom of association claim.

As such, that claim fails as well.  The Court declines to grant Plaintiff leave to amend these two claims, as they could not possibly be cured by the allegation of other facts.  The Court analyzes all of Plaintiff's claims in the order in which they were presented in his complaint.

### A.   First Amendment Retaliation

The First Amendment shields public employees from employment retaliation for their protected speech.  *Connick v. Myers*, 461 U.S. 138, 142 (1983).  "There are three elements to a First Amendment retaliation claim[.]"  *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (citing *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006)).  To state a claim against a government employer for First Amendment retaliation, an employee must allege that: (1) he engaged in protected speech; (2) the employer took adverse employment action; and (3) his speech was a substantial or motivating factor for the adverse employment action.  *Turner v. City and Cnty. of S.F.*, 788 F.3d 1206, 1210 (9th Cir. 2015).  "Once a plaintiff has made such a showing, the burden shifts to the government to show that it would have taken the same action even in the absence of the protected conduct."  *O'Brien*, 818 F.3d at 932.  If the plaintiff fails to carry his burden at any step, he is not entitled to recovery, *Eng v. Cooley*, 552 F.3d 1062, 1071 (9th Cir. 2009), and his claim must be dismissed, *see Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) ("The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee [does not have a] First Amendment cause of action based on his . . . employer's reaction to the speech.") (citation omitted).

#### 1.   Matters of Public Concern

"A public employee's speech is protected under the First Amendment if the employee spoke 'as a citizen upon matters of public concern.' "  *Turner*, 788 F.3d at 1210 (quoting *Connick*, 461 U.S. at 147).  Whether the speech of Plaintiff's husband addressed matters of public concern is a question of law that must be determined by analyzing "the content, form, and context of a given statement, as revealed by the whole record."  *Connick*, 461 U.S. at 148.  Of these three factors, the content of the speech is the most important. *Johnson v. Multnomah Cnty., Or.*, 48 F.3d 420, 424 (9th Cir. 1995).

In *Desrochers v. City of San Bernardino*, 572 F.3d 703, 705 (9th Cir. 2009), the plaintiffs filed an internal grievance against their supervisor for a personality conflict that was impacting the efficiency and effectiveness of their police units. *Id.* at 705-06. After the supervisor transferred out of the plaintiffs' bureau, they turned their attention to filing similar grievances against other police supervisors. *Id.* at 706. In analyzing whether plaintiffs' grievances addressed matters of public concern, the Ninth Circuit observed:

> To address a matter of public concern, the content of the [plaintiff's] speech must involve issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government. On the other hand, speech that deals with individual personnel disputes and grievances and that would be of no relevance to the public's evaluation of the performance of governmental agencies is generally not of public concern. The same is true of speech that relates to internal power struggles within the workplace, and speech which is of no interest beyond the employee's bureaucratic niche.

*Desrochers*, 572 F.3d at 710 (quotation marks and citations omitted). The Ninth Circuit found that the plaintiffs' speech failed to address matters of public concern because the court could not conclude that the proper functioning of the police department was jeopardized by the actions of the supervisors. *Id.* at 712. In coming to its conclusion the court reiterated, "[T]he content of the communication must be of broader societal concern. [Our] focus must be upon whether the public or community is likely to be truly interested in the particular expression, or whether it is more properly viewed as essentially a private grievance." *Id.* at 713 (citation omitted).

Plaintiff alleges he was fired from his position at the University because his husband told President Robbins that a candidate for an executive-level position (Dr. Dake) did poorly in his job interviews. (Doc. 1, ¶ 33) Plaintiff also contends that his termination was related to his husband's comments to Dr. Robbins that hiring Dr. Dake would be the worst mistake he could make and that it could very likely cause Robbins the presidency. *Id.* ¶¶ 39, 42. These comments fail to address matters of public concern.

The speech of Plaintiff's husband fails to address matters of public concern because it did not implicate matters of political, social, or other public concern to the community. Instead, the comments focused on matters of personal interest as to how the president ran the department and whether Dr. Dake was a good candidate for the position of Senior Vice President. Plaintiff fails to contend that his husband spoke to the public at large about the University's purported rigged hiring process or the incompetence of its incoming senior executive (Dake). Assuming, arguendo, the rigged hiring process was the husband's motivation for speaking out against Dr. Dake, the motivation itself cannot be evaluated in the context of speech when it was never explicitly communicated.

The speech of Plaintiff's husband is similar to the internal grievances in *Desrochers*. The comments failed to address issues in which the public would likely be truly interested. Instead, the comments informed Dr. Robbins, the head of the University and the grievant's boss, that he thought one of the SVP candidates was unqualified and that it would be a mistake to hire him. Even if the Court were to accept Plaintiff's conclusory argument that his husband's speech was outside of his official duties as the CFO of the University, the Court finds the comments were related to his husband's official duties as co-chair of the search committee charged with vetting the candidates.

Finally, the form and context of the speech demonstrate that Plaintiff's husband reported his feedback under the chain of command and that he did not speak out in contravention to his bosses' wishes. Plaintiff's husband simply voiced an honest and unpopular opinion to the president of the University. Such comments are not protected by the First Amendment to the Constitution. Accordingly, Plaintiff's complaint fails to plausibly allege that his husband spoke as a private citizen on a matter of public concern, and his claim of First Amendment retaliation fails.

### B. Freedom of Association

In *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), the Supreme Court determined that the Constitution protects freedom of association in two distinct senses. It ruled:

> [T]he Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme. In this respect, freedom of association receives protection as a fundamental element of personal liberty. In another set of decisions, the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion. The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties. . . . The intrinsic and instrumental features of constitutionally protected association may, of course, coincide.

*Roberts*, 468 U.S. at 617–18.  The first form of freedom of association is classified as *freedom of intimate association*, which is protected under the Substantive Due Process Clause of the Fourteenth Amendment.  *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 458 (9th Cir. 2018), *amended*, 881 F.3d 792 (9th Cir. 2018).  The second form of freedom of association is classified as *freedom of expressive association*, which is protected under the Freedom of Speech Clause of the First Amendment.  *Id.*

*Roberts* is the basis for at least two circuit courts of appeal decisions which hold that a plaintiff has a cause of action for a violation of his First Amendment right to freedom of association when he suffers an adverse employment action based on the activity of his spouse.  *See, e.g., Adler v. Pataki*, 185 F.3d 35, 44 (2d Cir. 1999) (holding that "a spouse's claim that adverse action was taken solely against [him] in retaliation for [the] conduct of [his] spouse should be analyzed as a claimed violation of a First Amendment right of intimate association"); *Adkins v. Bd. of Educ. of Magoffin Cty., Ky.*, 982 F.2d 952, 956 (6th Cir. 1993) (holding that while the plaintiff "had no property right to continued employment[,] she had a liberty interest in not being denied employment for exercising her First Amendment right to freedom of association[,]" when she suffered an adverse

employment action based on the activities of her husband).

District courts have also found that retaliation against a public employee for the speech of a close family member violates the right to freedom of association. *See, e.g., Isakhanova v. Muniz*, No. 15-CV-03759-TEH, 2016 WL 1640649, at *4 (N.D. Cal. Apr. 26, 2016) (holding that a plaintiff can be denied her First Amendment rights when the individual "suffer[s] retaliation for his or her perceived association with the speech of a close family member"); *Lewis v. Eufaula City Bd. of Educ.*, 922 F. Supp. 2d 1291, 1302 (M.D. Ala. 2012) ("[T]he First Amendment may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff herself, but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for her perceived association with the other person and that person's speech").

While Plaintiff's allegations—taken in the light most favorable to him—may constitute a violation of the Constitution, neither the Supreme Court nor the Ninth Circuit have clearly delineated the parameters of associational rights vis-à-vis a First Amendment retaliation claim. Accordingly, Defendants are entitled to qualified immunity on this cause of action.

### 1. Qualified Immunity

In *Capp v. County of San Diego*, 940 F.3d 1046 (9th Cir. 2019), the Ninth Circuit addressed the doctrine of qualified immunity in detail. It observed:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. It gives government officials breathing room to make reasonable but mistaken judgments about open legal questions, and, [w]hen properly applied, [ ] protects all but the plainly incompetent or those who knowingly violate the law.
>
> . . . .
>
> The Supreme Court has articulated a discretionary two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts

> that a plaintiff has alleged or shown make out a violation of a constitutional right. Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct.

*Capp*, 940 F.3d at 1053 (quotation marks and citations omitted).  For a right to be clearly established:

> [It] must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In rare cases, a violation may be so obvious that every reasonable official would be on notice that the conduct in question was unlawful. Normally, however, an official is on notice only when existing precedent has placed the statutory or constitutional question beyond debate. Thus, to survive a motion to dismiss based on qualified immunity, a plaintiff must point to prior case law that articulates a constitutional rule specific enough to alert these [officials] in this case that their particular conduct was unlawful.

*Stuart v. City of Scottsdale*, No. CV-20-00755-PHX-JAT, 2020 WL 4446506, at *7 (D. Ariz. Aug. 3, 2020) (quotation marks and citations omitted).

Plaintiff contends that cases such as *Roberts v. United States Jaycees*, 468 U.S. 609 (1984), *Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017), *Ellins v. Sierra Madre*, 710 F.3d 1049 (9th Cir. 2013), *Karl v. City of Mountlake Terrace*, 678 F.3d 1062 (9th Cir. 2012), *Clairmont v. Sound Mental Health*, 632 F.3d 1091 (9th Cir. 2011), *Robinson v. York*, 566 F.3d 817 (9th Cir. 2009), *Settlegoode v. Portland Public Schools*, 371 F.3d 503 (9th Cir. 2004), *Coszalter v. City of Salem*, 320 F.3d 968 (9th Cir. 2003), *Hufford v. McEnaney*, 249 F.3d 1142 (9th Cir. 2001), *Hollister v. Tuttle*, 210 F.3d 1033 (9th Cir. 2000), *Nunez v. Davis*, 169 F.3d 1222 (9th Cir. 1999), *Gilbrook v. City of Westminster*, 177 F.3d 839 (9th Cir. 1999), *Metro Display Advertising, Inc. v. City of Victorville*, 143 F.3d 1191 (9th Cir. 1999), *Lambert v. Richard*, 59 F.3d 134 (9th Cir. 1995), *Duran v. City of Douglas, Arizona*, 904 F.2d 1372 (9th Cir. 1990), *IDK, Inc. v. Clark County*, 836 F.2d 1185 (9th Cir. 1988),

and a few of the cases already addressed in this section, support the proposition that a plaintiff may bring a First Amendment retaliation claim for the protected activity of his spouse. (Doc. 17 at 10-13) However, upon review of these decisions, the Court fails to locate any *controlling* opinion that clearly stands for Plaintiff's proposition. While some cases endorse First Amendment rights, *see, e.g., Moonin*, *Ellins*, *Karl*, *Clairmont*, *Robinson*, *Coszalter*, and *Hufford*, or a right to freedom of association, *see, e.g., Roberts* and *IDK*, none of the cases establish precedent which has placed the constitutional question (whether Plaintiff has a constitutional right under the First Amendment to be free from retaliation for the protected speech of his spouse) beyond debate. Even if such precedent were clearly established, Plaintiff's claim would still fail, as the Court has determined that the speech of Plaintiff's husband is unprotected. Accordingly, Plaintiff's freedom of association claim fails, and because the claim could not possibly be cured by the allegation of other facts, it is dismissed with prejudice.

## II.     Equal Protection under the Fourteenth Amendment

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quotation marks and citation omitted). To state a claim under section 1983 for a violation of the Equal Protection Clause, a plaintiff must sufficiently allege that he was treated differently than others similarly situated and that the disparate treatment was intentional. *Bhagat v. City of Santa Ana*, 58 F. App'x 332, 334 (9th Cir. 2003).

In the scenario at hand, Plaintiff fails to outline allegations that plausibly demonstrate Defendants acted with discriminatory intent when they terminated him from his position at UAHS. He also fails to allege sufficient facts from which the Court can reasonably infer that he was terminated because he is gay. While Plaintiff contends he was "the only homosexual male at his level of seniority in UAHS who was terminated at [the] time[,]" (Doc. 1, ¶ 56), this allegation fails to suggest that Plaintiff's heterosexual

comparators were treated more favorably. Rather, the allegation implies that UAHS employed other homosexual males at Plaintiff's seniority level who were not terminated at the same time.

The Court cannot reasonably infer that Plaintiff was fired due to his sexual orientation since he suggests Defendants had no issue with retaining other gay men in similar positions. Although an inference may be made that there were other non-discriminatory reasons for Plaintiff's departure, simply because those reasons went undisclosed does not mean that his termination was unlawful. The Court grants Plaintiff leave to allege facts which would demonstrate that he was treated differently than others similarly situated and that the disparate treatment was intentional. Accordingly, Plaintiff's Equal Protection claim is dismissed without prejudice.

### III.  Disparate Treatment under Title VII

Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). In *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028 (2015), the Supreme Court referred to these two proscriptions as the "disparate treatment" provision and the "disparate impact" provision, and reiterated that they "are the only causes of action under Title VII." *Id.* at 2032.

In *Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731 (2020), a decision issued in June, the Supreme Court held that Title VII prohibits discrimination based on sexual

orientation, as "discrimination based on homosexuality . . . necessarily entails discrimination based on sex[.]" *Id.* at 1746-47. Therefore, to state a claim for disparate treatment under Title VII, a plaintiff must allege: (1) he was discharged (2) because of (3) his sex (which includes sexual orientation). *See Abercrombie & Fitch*, 135 S. Ct. at 2032 (outlining similar claim for religious discrimination).

Defendants concede Plaintiff is a gay male who was discharged from employment at the University. They argue, however, that Plaintiff fails to adequately allege that his sexuality was a motivating factor in their decision to fire him. It is clear that Title VII prohibits using an individual's sexual orientation as a "motivating factor" in employment decisions. *See Abercrombie & Fitch*, 135 S. Ct. at 2032 (quoting 42 U.S.C. § 2000e-2(m) ("Title VII . . . prohibit[s] even making a protected characteristic a 'motivating factor' in an employment decision.")) What is not clear is that the Arizona Board of Regents used Plaintiff's sexual orientation as a motivating factor in its alleged decision to fire him. To support his claim, Plaintiff contends (i) the individual Defendants knew of his sexual orientation; (ii) he had a solid employment record at the University; and (iii) that he "was the only homosexual *male* at *his level of seniority* in *UAHS* who was terminated *at that time*." (Doc. 1, ¶¶ 23, 42, 56) (emphasis added).

In *Wood v. City of San Diego*, 678 F.3d 1075 (9th Cir. 2012), the Ninth Circuit elucidated pleading standards for claims of disparate treatment under Title VII. It observed:

> Disparate treatment occurs where an employer has treated a particular person less favorably than others because of a protected trait. A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action. A discriminatory motive may be established by the employer's informal decisionmaking or a formal, facially discriminatory policy, but liability depends on whether the protected trait ... actually motivated the employer's decision. It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group.

*Wood*, 678 F.3d at 1081 (quotation marks and citations omitted).

Here, Plaintiff fails to provide sufficient allegations for the Court to draw the reasonable inference that he was terminated because he is gay. He provides only conclusory allegations that his sexuality was a motivating factor for his termination. Not only does Plaintiff fail to sufficiently allege that his sexuality was used against him, he also fails to reference any similarly situated individual or group that was treated more favorably. Plaintiff's tenuous attempt to draw out qualified comparators falls far short of the pleading standards outlined in *Iqbal*. Plaintiff is granted leave of thirty days to amend his complaint to submit other facts upon which he may state a Title VII claim. Accordingly, this cause of action is dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss. Plaintiff's First Amendment retaliation and freedom of association claims are DISMISSED WITH PREJUDICE. Plaintiff's equal protection and Title VII claims are DISMISSED WITHOUT PREJUDICE. The Court allows Plaintiff thirty (30) days to file an amended complaint.

IT IS SO ORDERED:

1. Defendants' Motion to Dismiss (Doc. 16) is GRANTED IN PART AND DENIED IN PART.
2. Plaintiff's First Amendment retaliation claim and freedom of association claim are DISMISSED WITH PREJUDICE.
3. Plaintiff's equal protection claim and Title VII disparate treatment claim are DISMISSED WITHOUT PREJUDICE.
4. Plaintiff is GRANTED LEAVE of 30 days, from the date of entry of this Order, to file an amended complaint.

Dated this 11th day of August, 2020.

*[signature]*
Honorable Cindy K. Jorgenson
United States District Judge