**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony T DeFrancesco,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-20-00011-TUC-CKJ<br><br>**ORDER** |

Before the Court is Defendants' Motion to Dismiss First Amended Complaint. (Doc. 35) For the reasons that follow, Defendants' Motion is granted, and Plaintiff's equal protection and Title VII disparate treatment claims are dismissed.

### BACKGROUND[1]

In June 2019, Plaintiff Anthony DeFrancesco was terminated from his position as Senior Director of Operations at the University of Arizona Health Sciences ("UAHS"). UAHS is part of the University of Arizona, and Plaintiff had been employed at the University for approximately four-and-one-half years before he was let go. Plaintiff's supervisor at the time of his termination was Dr. Michael Dake. Dr. Dake held the title of Senior Vice President, and it is Plaintiff's contention that Dr. Dake harassed, discriminated against, and ultimately terminated him because of his sexual orientation.

---

[1] The information in this section is taken from Plaintiff's First Amended Complaint. (Doc. 32) In analyzing Defendants' Motion to Dismiss, the Court takes all allegations of material fact as true and construes them in the light most favorable to Plaintiff.

## PROCEDURAL HISTORY

On August 12, 2020, the Court issued an Order granting in part and denying in part Defendants' first Motion to Dismiss Complaint. (Doc. 31)  The Order dismissed with prejudice Plaintiff's First Amendment retaliation and freedom of association claims and dismissed without prejudice Plaintiff's equal protection and Title VII disparate treatment claims. *Id.*  On September 11, 2020, Plaintiff filed his First Amended Complaint ("FAC"). (Doc. 32)  On October 16, 2020, Defendants filed their Motion to Dismiss First Amended Complaint. (Doc. 35)  On November 20, 2020, Plaintiff filed his Opposition to Defendants' Motion to Dismiss First Amended Complaint (Doc. 39); and on December 18, 2020, Defendants filed their Reply in Support of Motion to Dismiss First Amended Complaint. (Doc. 42)  This Order follows.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Dismissal is appropriate when the complaint fails to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks and citation omitted).

"In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party; but conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal." *Turner v. City and Cnty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quotation marks and citation omitted). Not only must a complaint "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively[,]" its "factual

allegations . . . must plausibly suggest an entitlement to relief such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

"[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008). Furthermore, a plaintiff may plead himself out of court if he pleads facts which establish that he cannot prevail on his claim. *Weisbuch v. Cnty. of L.A.,* 119 F.3d 778, 783 n.1 (9th Cir. 1997). "If a defective complaint can be cured, a plaintiff is entitled to amend the complaint before the action is dismissed." *Sheets v. City of Winslow*, No. CV-19-08187-PCT-JJT, 2020 WL 4514947, at *7 (D. Ariz. Mar. 6, 2020) (citing *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000)). However, "failure to supply new facts within an amended complaint supports a denial of further leave to amend." *Bhagat v. City of Santa Ana*, 58 F. App'x 332, 334 (9th Cir. 2003) (citation omitted). "[I]t [is] not an abuse of discretion for [a] district court to dismiss without leave to amend" when a plaintiff "offer[s] only a new theory and no satisfactory explanation for his failure to fully develop his contentions originally." *Vincent v. Trend W. Tech. Corp.*, 828 F.2d 563, 571 (9th Cir. 1987) (quotation marks and citation omitted).

## DISCUSSION

Defendants request that the Court dismiss Plaintiff's FAC arguing that Plaintiff has failed to cure the deficiencies in his original complaint and that he relies on unsubstantiated stereotypes as opposed to well-pleaded facts to establish his claims. (Doc. 35 at 2) Plaintiff argues that his termination from UAHS cannot be explained by legitimate, non-discriminatory reasons and that his FAC plausibly alleges that he was discriminated against because of his sexual orientation when he was terminated from his job. (Doc. 39 at 5) The issue for the Court to decide is whether Plaintiff sufficiently pleaded plausible causes of action for violations of the Equal Protection Clause and Title VII of the Civil Rights Act of 1964 and should be allowed to proceed with his claims. The Court finds that Plaintiff,

once again, fails to provide sufficient factual matter, accepted as true, to state claims to relief that are plausible on their face. *See Iqbal*, 556 U.S. at 678. Plaintiff also fails to provide other sufficient factual information to allow the Court to draw the reasonable inference that he was intentionally discriminated against because of his sexual orientation. As such, Plaintiff's equal protection and Title VII disparate treatment claims are dismissed.

## I.     Equal Protection Claim

"The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the state's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (quotation marks and citation omitted). "The Equal Protection Clause is essentially a direction that all persons similarly situated should be treated alike." *Roe by & through Slagle v. Grossmont Union High Sch. Dist.*, 443 F. Supp. 3d 1162, 1168 (S.D. Cal. 2020) (quotation marks and citation omitted). "To state a claim . . . for a violation of the Equal Protection Clause . . . a plaintiff must show that the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Spears v. Arizona Bd. of Regents*, 372 F. Supp. 3d 893, 917 (D. Ariz. 2019) (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

"[C]laims based on Equal Protection violations must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent." *Monteiro v. Tempe Union High Sch. Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish that "the decision-maker . . . selected or reaffirmed a particular course of action[,] at least in part[,] because of, not merely in spite of, its adverse effects upon an identifiable group." *Rosenbaum v. City & Cnty. of San Francisco*, 484 F.3d 1142, 1153 (9th Cir. 2007) (cleaned up). A plaintiff is a member of an identifiable class, for equal protection purposes, when he alleges discrimination on the basis of sexual orientation. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134-35 (9th Cir. 2003).

Plaintiff's FAC is long on rhetoric but short on substance. Plaintiff alleges that: he earned a stellar employment record and failed to receive a single complaint during his tenure (Doc. 32, ¶ 21 at 4-5); he requested promotions and pay increases commensurate with his actual job responsibilities, *id.*, ¶ 22 at 5; Dr. Dake is a heterosexual male who chose to specialize in one of the most male-dominated medical specialties with a reputation for a jock/frat culture, *id.*, ¶ 26 at 5; Dr. Dake holds biases in favor of masculine, heterosexual males as ideal candidates for traditionally male-dominated fields, such as finance, *id.*, ¶ 27 at 5; Dr. Dake learned that Plaintiff is married to a man, who at the time, was Senior Vice President and the Chief Financial Officer for the University, *id.*, ¶ 28 at 6; shortly after commencing his employment, Dr. Dake told Plaintiff that he was fired and that he had to reapply for his job, *id.*, ¶ 29 at 6; Dr. Dake subjected Plaintiff to targeting and harassment, *id.*, ¶ 30 at 6; Dr. Dake told Plaintiff at a meeting that he intended to keep the Associate Vice President ("AVP") of Finance and Administration position open and continue to search for a replacement, *id.*, ¶ 33 at 6; approximately two months after joining the University, Plaintiff had assumed the AVP's duties and responsibilities, in addition to his own, because the AVP resigned, *id.*, ¶ 16 at 4; Dr. Dake stated that he was looking for someone who was "strategic" and a "broad thinker" to fill the AVP position, *id.*, ¶ 34 at 6; Dr. Dake told Plaintiff that he had "a decision to make" now that Plaintiff's husband had left the University, *id.*, ¶ 35 at 6-7; when Plaintiff refused to resign, Dr. Dake orchestrated a campaign of harassment to make Plaintiff's life miserable, including undermining Plaintiff in the presence of Plaintiff's subordinates and emailing and speaking with Plaintiff's direct reports without informing Plaintiff, *id.*, ¶ 37 at 7; there was no bona fide reason for Dr. Dake's conduct, as Plaintiff had a stellar employment record and consistent level of success his entire tenure, *id.*, ¶ 39 at 7; Dr. Dake's conduct was intentionally targeted to cause Plaintiff emotional and psychological harm such that Plaintiff would leave the University, *id.*; Dr. Dake formally terminated Plaintiff effective June 30, 2019, *id.*, ¶ 41 at 7; Plaintiff was the only homosexual male at his level of seniority at UAHS who was terminated at that time, *id.*; there were many heterosexual males at his level of seniority

at UAHS, at that time, but they were permitted to keep their jobs, *id.*; the University hired a heterosexual male as the AVP for Finance and Administration after Plaintiff was terminated, *id.*, ¶ 43 at 8; the hiring of a heterosexual AVP shows that Dr. Dake's comments were mere pretext for discrimination, *id.*, ¶ 44 at 8; Dr. Dake refused to allow Plaintiff to work from home after Plaintiff was notified of his termination, *id.*, ¶ 45 at 8.

The Court declines to accept as true Plaintiff's allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). This leaves contentions that lack facial plausibility of an equal protection violation and which invite the Court to draw the reasonable inference that only a sheer possibility exists that Dr. Dake acted in a discriminatory and unlawful manner when he terminated Plaintiff. *See Iqbal*, 556 U.S. at 678. The Court credits Defendants argument that "Plaintiff continues to rely on the classic false syllogism that fails to support an inference of discrimination: I am (fill in the protected class of which the plaintiff is a member); something bad happened to me . . . ; therefore the bad thing happened because I am (fill in the protected class)," as it sufficiently addresses the plausible allegations with which the Court is left. *See* Doc. 36 at 8.

Plaintiff also fails to establish that Dr. Dake terminated him because of its adverse effects upon homosexuals. The facts that the Court reasonably gleans from the FAC is that Plaintiff was doing a good job and requested a pay raise and the addition of the AVP role to his current title; he was denied both the raise and the AVP title; Dr. Dake made vague comments, unrelated to Plaintiff's sexual orientation, about wanting to hire another candidate based on certain qualities and characteristics; Plaintiff was terminated; after Plaintiff was terminated, Dr. Dake hired a heterosexual man to fill the AVP role. There are numerous reasonable inferences that the Court can draw these facts. That Dr. Dake harassed and terminated Plaintiff *because of Plaintiff's sexual orientation* is not one of them. Accordingly, Plaintiff's equal protection claim is dismissed.

**II.     Title VII Disparate Treatment Claim**

Title VII of the Civil Rights Act of 1964 makes it unlawful for employers subject to

the Act to discriminate on the basis of a person's "race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "The Supreme Court and the lower courts have interpreted this language as giving rise to at least three types of sex discrimination claims: disparate treatment (adverse employment actions motivated by sex); quid pro quo sexual harassment (conditioning employment benefits on submission to sexual advances); and hostile work environment harassment (unwelcome sexual advances so severe as to alter the terms and conditions of employment). *Maner v. Dignity Health*, No. 18-17159, 2021 WL 3699780, at *4 (9th Cir. Aug. 20, 2021).

In *Wood v. City of San Diego*, the Ninth Circuit discussed the relevant pleading criteria for disparate treatment claims under Title VII. 678 F.3d 1075 (9th Cir. 2012). It observed:

> Disparate treatment occurs where an employer has treated a particular person less favorably than others because of a protected trait. A disparate-treatment plaintiff must establish that the defendant had a discriminatory intent or motive for taking a job-related action. A discriminatory motive may be established by the employer's informal decisionmaking or a formal, facially discriminatory policy, but liability depends on whether the protected trait . . . actually motivated the employer's decision. It is insufficient for a plaintiff alleging discrimination under the disparate treatment theory to show the employer was merely aware of the adverse consequences the policy would have on a protected group.

*Wood*, 678 F.3d at 1081 (quotation marks and citation omitted).

In *Bostock v. Clayton County, Georgia*, the Supreme Court held that Title VII prohibits discrimination based on sexual orientation, as "discrimination based on homosexuality . . . necessarily entails discrimination based on sex[.]" 140 S. Ct. 1731, 1746-47 (2020). Therefore, to state a Title VII disparate treatment claim based on sexual orientation, a plaintiff "must state sufficient facts to show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action

- 7 -

give rise to an inference of discrimination." *Sheets v. City of Winslow*, No. CV-19-08187-PCT-JJT, 2020 WL 4514947, at *2 (D. Ariz. Mar. 6, 2020) (quotation marks and citations omitted).

Defendants argue that Plaintiff failed to satisfy the fourth prong of the disparate treatment standard by failing to identify similarly situated individuals who were treated more favorably than him. (Doc. 35 at 6-9) The Court agrees. "When utilizing the similarly situated framework, [a plaintiff] must show that he and the individuals outside his protected class [were] similarly situated in all material respects." *Sheets*, 2020 WL 4514947, at *4 (quotation marks and citation omitted). "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003), *as amended* (Jan. 2, 2004). "The employees' roles need not be identical[,]" but they must "be similar in all material respects." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1157 (9th Cir. 2010) (quotation marks and citation omitted). "Although material characteristics vary from case to case, in termination and discipline cases, the Ninth Circuit looks to factors such as whether the proposed comparator and the plaintiff were subject to the same policies, worked at the same jobs, . . . and had similar disciplinary records." *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d 1300, 1311 (W.D. Wash. 20104).

Here, Plaintiff fails to allege sufficient factual information demonstrating that he and individuals outside of his protected class were similarly situated in all material respects. Plaintiff vaguely contends that "there were . . . many heterosexual males at his level of seniority in UAHS at the time, but they were permitted to keep their jobs." (Doc. 32 at 7) This allegation fails to contain sufficient factual material to demonstrate that Plaintiff's comparators were similarly situated and that he is entitled to proceed on his disparate treatment claim.

Plaintiff also fails to allege that his comparators engaged in conduct similar to his. *See generally*, Doc. 32. For example, Plaintiff fails to contend that his comparators repeatedly asked for salary increases and job titles in addition to ones they already

possessed. Plaintiff also fails to indicate how long his comparators served in their respective positions or that their positions required similar levels of responsibility. Courts have determined that the lack of this type of information is insufficient to survive the similarly situated prong of Title VII discrimination claims. *See Vasquez*, 349 F.3d at 641 (finding that plaintiff and his comparators were not similarly situated when they failed to hold the same level of position); *Sheets*, 2020 WL 4514947, at \*4 (finding that the plaintiff failed to plead facts showing similarly situated comparators when he and his comparator were not in the same position); *Frisby v. Town of Mammoth*, No. CV-16-02599-PHX-ROS, 2018 WL 4207989, at \*6 (D. Ariz. Sept. 4, 2018) (finding that the "[p]laintiffs' alleged facts simply suggest[ed] [p]laintiffs belonged to one race, were terminated at the direction of someone who happened to be of another race, and that some unknown employees, employed in unknown positions somewhere within the Town . . . , reporting to unknown supervisors, and with unknown connections to [the defendant] or to [p]laintiffs, who were not of [p]laintiffs race, were not also terminated"). Without an adequate identification of similarly situated comparators, Plaintiff's disparate treatment claim fails.

In addition to failing to allege facts showing that he and his comparators were similarly situated in all material respects, Plaintiff fails to plausibly allege "other circumstances surrounding his termination which give rise to an inference of discrimination." *See Sheets*, 2020 WL 4514947, at \*2. Plaintiff only provides conclusory allegations, unwarranted deductions of fact, or unreasonable inferences to prove his theory of sexual orientation discrimination (e.g., the conclusory allegation that Dr. Dake is a heterosexual male who chose to specialize in one of the most male-dominated medical specialties with a reputation for a jock/frat culture; the unreasonable inference that Dr. Dake holds biases in favor of masculine, heterosexual males as ideal candidates for traditionally male-dominated fields, such as finance, the unwarranted deduction of fact that since Dr. Dake hired a heterosexual candidate for the role of AVP, he must have fired Plaintiff, acting in a separate role, because he is homosexual; the unwarranted deduction of fact that because Plaintiff was fired and is homosexual and no one else was terminated

at the time, the reason for Plaintiff's termination must be his sexual orientation; and other inconsequential ancillary facts surrounding his alleged harassment and termination). Such flawed allegations fail to allow the Court to draw the reasonable inference that Plaintiff's termination was intentionally motivated by his sexual orientation. Accordingly, Plaintiff's Title VII disparate treatment claim fails, and his claim is dismissed.

### III. Dismissal With Prejudice

On August 12, 2020, this Court entered an Order dismissing Plaintiff's First Amendment retaliation and freedom of association claims with prejudice and his equal protection and Title VII claims without prejudice. (Doc. 31 at 16) As it concerned his equal protection claim, the Order stated that Plaintiff failed to outline allegations that plausibly demonstrated that Defendants acted with discriminatory intent when they terminated him from his position at UAHS. *Id*. at 12. It also observed that Plaintiff failed to allege sufficient facts from which the Court could reasonably infer that he was terminated because of his sexual orientation. *Id*. The Court granted Plaintiff leave to allege facts which would demonstrate that the disparate treatment he suffered was intentional." *Id*. at 13.

As it concerned his disparate treatment claim, the Court ruled that Plaintiff failed to provide sufficient allegations for it to draw the reasonable inference that he was terminated because of his sexual orientation. *Id*. at 15. The Court reasoned that Plaintiff only provided conclusory allegations that his sexuality was a motivating factor for his termination; and that he failed to reference any similarly situated group or individual that was treated more favorably. *Id*. The Court concluded that Plaintiff's attempt to draw out qualified comparators fell far short of the *Iqbal* pleading standards. *Id*. Plaintiff was granted leave to amend his complaint to submit other *facts* upon which he could state a Title VII claim. *Id*.

Despite the Court's advice, there is little substantive difference between Plaintiff's original and first amended complaints. *Compare* Docs. 1, 32. The allegations Plaintiff has added fail to contain sufficient factual content for the FAC to be plausible on its face. *See,*

*e.g.*, Doc. 32, ¶¶ 41, 43-44 at 7-8.  *In Moss v. U.S. Secret Service*, the Ninth Circuit elucidated adequate pleading standards post *Twombly*.  572 F.3d 962 (9th Cir. 2009).  It observed:

> Prior to *Twombly,* a complaint would not be found deficient if it alleged a set of facts consistent with a claim entitling the plaintiff to relief. Under the Court's latest pleadings cases, however, the facts alleged in a complaint must state a claim that is plausible on its face. As many have noted, this is a significant change, with broad-reaching implications.

572 F.3d at 972.

Plaintiff has repeatedly proffered insufficient allegations to state claims for equal protection and Title VII violations.  The gravamen of his FAC utilizes conclusory statements, unwarranted deductions of fact, and unreasonable inferences in an attempt to outline valid claims. The factual content he has sufficiently alleged falls far short of the employment discrimination of which he complains.  The Court finds that Plaintiff has failed to supply new facts which would entitle him to relief and that he has only provided questionable theories of violations and no satisfactory explanation for his failure to fully develop his original allegations.  Accordingly, the Court sees no point in granting Plaintiff leave to amend his complaint and dismisses his claims with prejudice.

**IT IS ORDERED:**

1. Defendants' Motion to Dismiss First Amended Complaint (Doc. 35) is GRANTED.

2. Plaintiff's equal protection claim and Title VII disparate treatment claim are DISMISSED.

3. The Clerk of Court is instructed to close this case.

Dated this 14th day of September, 2021.

_____
Honorable Cindy K. Jorgenson
United States District Judge