**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony T DeFrancesco,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-20-00011-TUC-CKJ<br><br>**ORDER** |

On September 14, 2021, the Court granted Defendants' Motion to Dismiss the First Amended Complaint (FAC). The Court, inadvertently, did not enter Judgment until September 28, 2021. Plaintiff has filed an appeal. On October 12, 2021, Defendants filed a Motion for Attorneys' Fees Pursuant to 42 U.S.C. § 1988(b) and 42 U.S.C. § 2000e-5(k). It is well established that in a case brought under Title VII or 42 U.S.C. § 1983, a prevailing defendant will generally not receive an award of attorney fees. The Court finds that this is not the rare nor the exceptional case for awarding attorney fees to a prevailing defendant. The motion for attorney fees is denied.

Standard of Review

The Ninth Circuit has explained the policy underlying the rule against awarding fees to prevailing defendants in civil rights cases is necessary in large part to encourage individuals injured by discrimination to seek judicial relief. *Harris v. Maricopa Cty. Superior Court,* 631 F.3d 963, 971 (9th Cir. 2011). "The Court explained that '[e]ven when unsuccessful such suits provide an important outlet for resolving grievances in an orderly

manner and achieving non-violent resolutions of highly controversial, and often inflammatory, disputes.'" *Id.* "Civil rights suits ensure 'broad compliance with our civil rights laws,' which is a policy of the highest priority." *Id.*

This Court will not award attorneys' fees to prevailing defendants under 42 U.S.C. § 1988 and 2000e-5(k) unless there are "exceptional circumstances," *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990); the Court must find that the Plaintiff's claim was frivolous, unreasonable, or groundless, or that the Plaintiff continued to litigate after this became apparent, *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421 (1978) (defining the standard for prevailing defendants in Title VII cases), *Harris*, 631 F.3d at 975-76 (using the *Christiansburg* standard for section 1983 cases). This Court must not "engage in post hoc reasoning by concluding that, because Plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christianburg Garment Co.*, 434 U.S. at 421-22 ("This kind of hindsight logic could discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success.")

The Defendants do not argue the law and note that both parties cite to many of the same cases. (Reply (Doc. 54) at 3.) Defendants submit that, "while not routinely granted," fee awards to prevailing defendants "are not nearly as rare as Plaintiff would have the Court believe." *Id.* Defendants submit that the Court should award it attorney fees because "Plaintiff could not have had a good faith belief that his constitutional rights were violated. Plaintiff's conduct demonstrates that he brought them for a vexatious purpose." *Id.* The Defendants refer to the Plaintiff's amendment of the Complaint which failed to make any significant change or addition to facts even after the Court explained its deficiencies and afforded Plaintiff leave to amend to cure them.

The Defendants suggest much of Plaintiff's Response is misdirected arguing the merit of the claims. Defendants clarify that they "[do] not contend that Plaintiff's pleadings were frivolous based on the absence of a legal theory for Plaintiff's discrimination and retaliation claims. The claims can be pursued if properly supported by good-faith factual

allegations." (Reply (Doc. 54) at 5.) According to the Defendants, Plaintiff chose to include "frivolous factual allegations" in his pleadings, which not only failed to satisfy the legal requirements for the claims he attempted to assert, but also served no purpose other than to try to disparage and damage the reputations of the University's top administrators." *Id.* (citing *see, e.g., Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1006 (9th Cir. 2002) ("An action is 'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant."); *Zherka v. DiFiore*, 2010 WL 11530594, at *1 (S.D.N.Y. July 16, 2010) ("Fees under Section 1988 may be appropriate where the lawsuit was vexatious or brought to harass or embarrass the defendant)).

Plaintiff's Factual Allegations: the Complaint and FAC

The Court repeats the recap of the allegations made in the Complaint, which were included in the Court's Order granting in part and denying in part the Defendants' first motion to dismiss, which were as follows:

> In January 2015, Plaintiff Anthony DeFrancesco was hired as the Senior Director of Operations for the University of Arizona Health Sciences ("UAHS"). (Doc. 1, ¶ 14). Later that year, Plaintiff also assumed the duties of the Associate Vice President of Finance and Administration ("AVP") when the former AVP resigned. *Id.* ¶ 18. By December 2018, the University had yet to hire a replacement for the former AVP and Plaintiff was still performing the duties of that role. *Id.* ¶ 20. Plaintiff alleges he did not receive a single complaint during his tenure at the University. *Id.* ¶ 23.
>
> In 2017, Dr. Robbins, the president of the University of Arizona, put together a search committee to find a new Senior Vice President to run UAHS. *Id.* ¶ 26. At the time, Plaintiff's husband was a Senior Vice President and the Chief Financial Officer for the University and was the co-chair of the search committee. *Id.* ¶ 27.
>
> Plaintiff alleges that Dr. Robbins rigged the hiring process so that Dr. Dake, Robbins' best friend, would get the job as Senior Vice President. *Id.* ¶ 31. Plaintiff also contends that his husband informed Dr. Robbins that Dr. Dake did poorly in his job interviews and would not be among the finalists for the position. *Id.* ¶ 33. Plaintiff states that his husband told Dr. Robbins that if he were to hire Dr. Dake, it would be the worst mistake he could make and would very likely cost him his presidency. *Id.* ¶ 39.
>
> In March 2018, despite the warnings, Dr. Robbins hired Dr. Dake and allegedly informed him that Plaintiff's husband had been a vocal advocate against his candidacy. *Id.* ¶ 42. Dr. Robbins also allegedly told Dr. Dake that, as Senior Vice President over UAHS, he had the authority to fire Plaintiff. *Id.*

- 3 -

> By October 2018, Plaintiff's husband had voluntarily left the University, and on October 26, 2018, Plaintiff met with Dr. Dake to discuss Plaintiff's longstanding complaint that he be given a pay increase and promotion to reflect the fact that he was serving as the AVP of Finance and Administration in addition to his other duties. *Id.* ¶ 46. At the meeting, Plaintiff requested to be formally recognized as the AVP since he had been successfully completing the tasks of that position for more than two years. *Id*. ¶ 47. Dr. Dake demurred and said he would keep the position open, as he was looking for someone who was "strategic" and a "broad' thinker." *Id.* ¶¶ 48, 49. During the conversation, Dr. Dake also allegedly threatened Plaintiff by informing him that now that Plaintiff's husband had left the University, he had "a decision to make." *Id.* ¶ 50. Plaintiff alleges that Dr. Dake's tone made it clear that he was not welcome at the University while Dake was Senior Vice President over the department. *Id*.
>
> Plaintiff insinuates that he was asked to resign at or after his October 26th meeting with Dr. Dake. *Id.* ¶¶ 50-52. He asserts that when he refused to resign, Dake orchestrated a campaign of harassment to make his life miserable. *Id.* ¶ 52. The alleged harassment included undermining Plaintiff in meetings; asking questions to Plaintiff's subordinates in Plaintiff's presence, as if Plaintiff were not there; and communicating with Plaintiff's subordinates without Plaintiff's knowledge. *Id.* Plaintiff asserts he was humiliated by this conduct. *Id.* ¶ 53.
>
> On June 30, 2019, Dr. Dake terminated Plaintiff, making Plaintiff "the only homosexual male at his level of seniority in UAHS who was terminated at that time." *Id.* ¶¶ 55, 56.

(Order (Doc. 31) at 1-3.)

The Plaintiff alleged three causes of action against Defendants in his complaint: two claims under 42 U.S.C. § 1983, a First Amendment retaliation claim and an Equal Protection claim against Dr. Robbins and Dr. Dake in their individual capacities, and an employment discrimination claim under Title VII of the Civil Rights Act of 1964 against the Arizona Board of Regents.

The Court viewed the gravamen of Plaintiff's complaint as an assertion that he was terminated because of the protected conduct of his husband in violation of the First Amendment. (Doc. 1, ¶¶ 43, 65-66) In subsequent motions and during oral arguments on the matter, Plaintiff clarified that his First Amendment claim constitutes "a case where [he] alleges retaliation because of the First Amendment-protected speech of his spouse." (Doc. 17 at 7) The Court found that Plaintiff's First Amendment retaliation claim was connected to or at least intertwined with the freedom of association claim.

The Court found the alleged speech by Plaintiff's husband was not protected public speech, as follows: the Court found the comments were related to his husband's official duties as co-chair of the search committee charged with vetting candidates; Plaintiff's husband reported his feedback under the chain of command and that he did not speak out in contravention to his bosses' wishes, and Plaintiff's husband simply voiced an honest and unpopular opinion to the president of the University. The Court concluded that such comments are not protected speech, therefore, Plaintiff failed to plausibly allege a First Amendment retaliation claim. The Court found the law was not clearly established in the Ninth Circuit for retaliation against a public employee for the speech of a close family member and dismissed the freedom of association based on qualified immunity.

The Court dismissed these claims because they could not be cured by amendment—the alleged statements made by Plaintiff's husband were what they were, and were not protected speech as a matter of law. The Court dismissed, with leave to amend, the 14th Amendment equal protection claim and disparate treatment claim under Title VII.

As for the claim of equal protection, the Court explained that the Plaintiff failed to allege facts that plausibly demonstrated Defendants acted with discriminatory intent when they terminated him; he failed to allege facts raising a reasonable inference that he was terminated because he is homosexual. As for the Title VII claim, he alleged: (i) the Defendants knew of his sexual orientation; (ii) he had a solid employment record at the University; and (iii) that he "was the only homosexual male at his level of seniority in UAHS who was terminated at that time." The Court held, "[r]ather, the allegation implies that UAHS employed other homosexual males at Plaintiff's seniority level who were not terminated at the same time. The Court cannot reasonably infer that Plaintiff was fired due to his sexual orientation since he suggests Defendants had no issue with retaining other gay men in similar positions." (Order (Doc. 31) at 13.)

Both claims failed because it was not clear that the Plaintiff's sexual orientation was a motivating factor in the alleged decision to fire him. Plaintiff failed to allege facts suggesting that Plaintiff's heterosexual comparators were treated more favorably. *Id.* at 12-

13. The Court granted leave for Plaintiff to amend the Complaint to allege facts which would demonstrate that he was treated differently than others similarly situated, and that the disparate treatment was intentional due to his sexual orientation. *Id.* at 13.

The Plaintiff filed the FAC to allege that he was the only homosexual employee and that heterosexual male employees with similar seniority were not fired. (FAC (Doc. 32) ¶ 41.) He added that "President Robbins[1] and Dake are both heterosexual males who chose to specialize in one of the most male-dominated medical specialty—surgery— with a reputation for a jock/frat culture. The jock/frat culture within the field of surgery is well-known. Medical students often cite this toxic culture as the reason why they choose not to pursue a surgery residency." *Id.* ¶ 26. He alleged: "President Robbins and Dake, however, chose this specialty and have long bought into its culture. As such, President Robbins and Dake hold biases in favor of masculine, heterosexual males as ideal candidates for traditionally male-dominated fields, such as finance." *Id.* ¶ 27. The Court found these allegations failed to raise an inference of discrimination, especially because the facts alleged did demonstrate similarity in all material respects for making the comparative assessment for a disparate treatment case. (Order (Doc. 43) at 8.)

According to the Defendants, these allegations are "clearly baseless," "fanciful," or "delusional." (Motion Attorney Fees (Doc. 50) at 8 (quoting *Warden v. Garcia,* 2008 WL 11448024, at *1 (Ariz. May 1, 2008)). This was not the finding of the Court.

The Court found that the Plaintiff failed to allege facts showing a link between his termination and his sexual orientation as a homosexual. That does not mean that the alleged facts are clearly baseless, fanciful, or delusional. Even if Plaintiff proved there exists a stereotype among surgeons of "a jock/frat mentality favoring masculine, i.e., heterosexual males," this is not enough to link Plaintiff's termination to intentional or disparate impact discrimination. Even in combination with Plaintiff's alleged stellar work history, lack of any explanation for his termination, and clarification that other employees, who were not homosexual, with similar seniority were not fired, the Court found Plaintiff failed to allege

---

[1] Dr. Robbins was dropped as a defendant in the FAC. (Doc. 32.)

facts sufficient to even raise an inference that his termination was linked to his sexual orientation. The strongest fact alleged in support of his claim is that Dr. Dake told him that since his husband had quit, he now had a choice to make and that he understood the comment to be a reference to his heterosexual relationship and call for his resignation or that he would be fired. Applying *Ashcroft v. Iqbal,* 556 U.S.662, 678 (2009), the Court determined that all these facts, taken in combination, failed to provide sufficient factual matter, accepted as true, to state a claim of discrimination based on sexual orientation, homosexuality, that is plausible on its face. (Order (Doc. 43)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [] The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 2 (quoting *Iqbal,* 556 U.S. at 678)).

The Court found that the FAC, minus conclusory allegations, unwarranted deductions, and unreasonable inferences, left "only a sheer possibility" that Dr. Dake acted in a discriminatory and unlawful manner when he terminated the Plaintiff. (Order (Doc. 43) at 6.) (citing *Iqbal*, 556 U.S. at 678).

"In *Moss v. U.S. Secret Service*, the Ninth Circuit elucidated adequate pleading standards post *Twombly*. 572 F.3d 962 (9th Cir. 2009). (Order (Doc. 43) at 11.) "'Prior to *Twombly*, a complaint would not be found deficient if it alleged a set of facts consistent with a claim entitling the plaintiff to relief. Under the Court's latest pleadings cases, however, the facts alleged in a complaint must state a claim that is plausible on its face. As many have noted, this is a significant change, with broad-reaching implications.'" *Id.* (quoting *Moss,* 572 F.3d at 972) Those implications are reflected here in the Court's dismissal of Plaintiff's claim under *Twombly.*

Conclusion

While the allegations do not support a claim of discrimination, they are not frivolous; they are not "clearly baseless," "fanciful," or "delusional." Allegedly, Plaintiff,

who is a homosexual, was harassed by Dr. Dake for months and told by Dr. Dake to either quit or be fired during a conversation where his homosexuality was noted. Plaintiff was fired without explanation after years of exemplary work performance; Defendants offered no legitimate reason for firing him. Plaintiff also alleged that he was a homosexual employee and none of the many heterosexual males at his level of seniority were fired. These are not delusional or fanciful facts; all are subject to proof, including the Plaintiff's assertion that there is a frat-boy mentality of masculinity in the surgical profession. The Court does not address whether this is a "fantastical thesis" or a relevant cultural stereotype, but either way, it is not enough to support an inference of discriminatory animus.

There is no evidence that the Plaintiff does not believe in good faith that he was fired based on his sexual orientation as a homosexual in violation of his constitutional rights. His conduct of filing the FAC, which was in most part the same as the Complaint and which failed to cure the deficiencies that were explained to him by the Court, does not demonstrate vexatious purpose. The Court rejects the Defendants' assertion that the Plaintiff alleged facts that served no purpose other than to try to disparage and damage the reputations of the University's top administrators. The allegations added in the FAC attempted to address the deficiencies noted by the Court when it dismissed the Complaint, with leave to amend, including clarifying that other heterosexual male employees, who were similarly situated in all material respects, were not fired and that there was discriminatory animus based on the alleged frat-boy stereotype within the surgical community preferring masculinity.

While the Court found the facts alleged by the Plaintiff failed to raise an inference of discrimination, the Court reminds the Defendants that under the *McDonnel Douglass* frame work, in a Title VII case where a plaintiff alleges disparate treatment but does not have direct evidence of discrimination, unlawful discrimination is presumed if the plaintiff demonstrates that he belongs to a protected class, he was performing according to his employer's legitimate expectations, he suffered an adverse employment action, and other employees with qualifications similar to his own were treated more favorably. *Godwin v.*

*Hunt Wesson, Inc.,* 150 F.3d 1217, 1220 (9th Cir.1998) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802); *Palmer v. Pioneer Inn Associates, Ltd.,* 338 F.3d 981, 984 (9th Cir.2003) (addressing *prima facie* case for discrimination on the basis of sex) (citation omitted). A plaintiff may utilize the *McDonnell Douglas Corp v. Green*[2] framework or direct evidence of discriminatory intent in establishing a *prima facie* case. *Id.*

The presumption exists because unlawful discrimination is often difficult to prove; "[r]arely can discriminatory intent be ascertained through direct evidence because rarely is such evidence available." *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348–49 (6th Cir. 1997). "It is the rare situation when direct evidence of discrimination is readily available, thus victims of employment discrimination are permitted to establish their cases through inferential and circumstantial proof." *Id.* (citing *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("[t]here will seldom be 'eyewitness' testimony as to the employer's mental processes")).

While a *prima facie* case will not prove the ultimate fact of discrimination, there is "an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Where the Plaintiff makes a *prima facie* showing raising an inference of discrimination, the burden shifts to the defendant to show a good reason for the alleged discriminatory conduct. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). "The distinct method of proof in employment discrimination cases, ... arose out of the Supreme Court's recognition that direct evidence of an employer's motivation will often be unavailable or difficult to acquire." *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071 (3d Cir. 1996).

*McDonnell Douglas* is an evidentiary framework; it is not a pleading standard. It also serves as a useful touchstone in evaluating whether plaintiff has a plausible claim to survive a motion to dismiss." *Sheppard v. David Evans & Assoc.*, 694 F.3d 1045, 1050 n.2

---

[2] 411 U.S. 792 (1973).

(9th Cir. 2012) (citing *Swierkiewicz*, 534 U.S. at 508–11). The Court applies it here to assess whether the Plaintiff's alleged facts were frivolous or made in good-faith to state a discrimination claim under Title VII. As the Court noted, the alleged facts created a mere possibility that the motivating factor for firing the Plaintiff was his sexual orientation, but the facts were insufficient to state a plausible claim of such discrimination. *See* (Order (Doc. 43)). In short, the Plaintiff's claim was not frivolous just because it was not plausible. The Court finds that the Plaintiff's FAC was neither frivolous nor vexatious. It was not clearly baseless, fanciful, or delusional.

**Accordingly,**

**IT IS ORDERED** that the Motion for Attorney Fees (Doc. 50) is DENIED.

Dated this 27th day of September, 2022.

_____
Honorable Cindy K. Jorgenson
United States District Judge