**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Anthony T. DeFrancesco,<br><br>Plaintiff,<br><br>v.<br><br>Arizona Board of Regents, et al.,<br><br>Defendants. | No. CV-20-00011-TUC-CKJ<br><br>**ORDER** |

For the reasons explained herein, the Court grants the Motion to Dismiss based on qualified immunity.

The Court denies the Plaintiff's request for oral argument because the parties provided memoranda thoroughly discussing the law and facts in support of their positions, and oral argument will not aid the Court's decisional process which is entirely based on a question of law. *See Mahon v. Credit Bur. of Placer County, Inc*., 171 F.3d 1197, 1200 (9th Cir. 1999) (explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

Procedural Background

On January 19, 2023, the United States Court of Appeals for the Ninth Circuit, affirmed in part and reversed in part this Court's dismissal of Plaintiff's claims against Defendants. The Mandate issued on February 10, 2023. The appellate court affirmed this Court's dismissal of Plaintiff's discrimination claims based on sex pursuant to Title VII

and the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution. The appellate court reversed this Court's dismissal of the First Amendment claim and remanded it for this Court to allow Plaintiff to file an amendment alleging facts demonstrating that the speech at issue here was protected and to state a claim of retaliation for that protected speech.

In summary, Plaintiff and his husband both worked for Defendants. Plaintiff's husband, Greg Goldman, Senior Vice President (SVP) and Chief Financial Officer (CFO) for the University, served as the co-chair of a search committee that was created to assist Defendant Dr. Robbins (Robbins), President of the University of Arizona, in finding a SVP for the University of Arizona Health Services (UAHS). Plaintiff's husband objected and spoke out against Robbins' selection of Defendant Dr. Dake (Dake), who was a close friend of Robbins and who the search committee believed was not the best candidate for the position. In the end Goldman resigned, leaving Plaintiff, Senior Director of Operations for UAHS working directly for Dake. Plaintiff alleges that Robbins told Dake about Plaintiff's husband's efforts to prevent his employment and authorized Dake to fire Plaintiff, which Dake did.

The appellate court affirmed the Court's dismissal of Count One, the Title VII and Equal Protection Clause claim, alleging Plaintiff was fired because he is gay. The appellate court found this Court's conclusion plausible that Plaintiff failed to state a First Amendment claim because Goldman's speech related to an individual personnel dispute and grievance, not a matter of public concern—but the Court erred in dismissing this claim without granting leave to amend.

According to the appellate court, Goldman allegedly told Defendant Robbins and other senior officials at the University that "Dake did poorly in interviews" and that "hiring Dake would be the worst mistake he [Robbins] could make." (Appellate Opinion (Doc. 58-1) at 5.) The appellate court explained:

> While this speech can be construed to implicate only workplace grievances or a "personality dispute," *see Desrochers v. City of San Bernardino,* 574 F.3d 703, 712(9th Cir. 2009), DeFrancesco contends that, if permitted to amend his complaint, he would allege facts demonstrating that Goldman

- 2 -

>spoke as a whistleblower on cronyism and corruption at UAHS, a "public health organization . . . with an annual budget of over $1 billion and over 500 employees." Allegations of government misconduct—including the rigging of the executive search process and the mismanagement of a hospital—can constitute protected speech as a matter of public concern. *See Ulrich v. City & Cnty of San Francisco,* 308 F.3d 968, 978 (9th Cir. 2002) (holding that a physician's internal protest of layoffs "touched on the ability of the hospital to care adequately for patients" and was therefore a matter of public concern); *Thomas v. City of Beaverton,* 379 F.3d 802, 811 (9th Cir. 2004) (holding that a genuine issue of material fact existed as to whether speech addressed a matter of public concern when an employee expressed disapproval of her employer's allegedly unlawful treatment of another employee).

*Id.* at 6.

The appellate court directed this Court to determine if Defendants Robbins and Dake are protected by qualified immunity under allegations as amended on remand. It did not opine on whether there is a clearly established First Amendment right to be free from retaliation based on the alleged protected speech of Plaintiff's husband, Goldman. The appellate court did not opine on this Court's finding that as a matter of law a First Amendment right to be free from retaliation for the speech of a spouse is not clearly established. The appellate court cautioned the Court to be mindful that "'[determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.'" *Id.* (quoting *Keates v. Koile,* 883 F.3d 1228, 1234 (9th Cir 2018)). If a plaintiff alleges even one harmful act that would constitute a violation of a clearly established constitutional right, the claim should be allowed to go forward. *Id.*

On remand, the Plaintiff has filed a Second Amended Complaint. Again, Defendants file a Motion to Dismiss arguing that Plaintiff fails to state a First Amendment retaliation claim and argues alternatively, that qualified immunity precludes this suit because the law is not clearly established, such that Defendants would have known it violated the First Amendment to fire Plaintiff in retaliation for his husband's alleged protected speech.

<u>The Second Amended Complaint (SAC)</u>

Plaintiff alleges that Defendants harassed and retaliated against him "because his husband[, Goldman,] exercised his First Amendment-protected right of free speech by opposing President Robbins' decision to hire Dake as Senior Vice President of UAHS."

- 3 -

(SAC (Doc. 62) ¶ 70.) In 2017, Robbins put together a search committee to find a new SVP for UAHS, *id.* ¶ 24, including retaining an executive search firm to assist the search committee, with several high-ranking employees of the firm being close personal friends of Robbins so that he could control the outcome of the search committee process, *id.* ¶ 28.

Goldman, who was SVP and CFO for the University, volunteered to serve as co-chair of the search committee, without compensation, to oversee the process. *Id.* ¶ 26. He was not a committee member charged with interviewing or evaluating candidates or participating on the search committee in any way, except to marshal information and ensure information was funneled to the ultimate decision maker, Robbins. *Id.* 27. Many applications were received, and Robbins encouraged his friend Dake to apply, which he did very late in the game. *Id.* ¶ 29. According to Robbins, "Dake is his 'longest, best and dearest friend.'" *Id.* ¶ 30.

When Dake did not rank competitively with other candidates, *id.* ¶¶ 31-36, Robbins was not concerned because "it was taken care of that Dake would be hired," *id.* ¶ 32. The search firm tallied votes in secret and would not disclose the actual votes, which included Dake among the finalists. *Id.* ¶ 34. The search committee members were concerned about going against Robbins by not recommending Dake and took anonymous votes to avoid repercussions on any one committee member. *Id.* ¶¶ 33, 37.

Candidate interviews led the search committee members to conclude that Dake was not qualified and had a questionable past, *id.*¶ 36, and Goldman reported the poor results of Dake's interview and anonymous views of the committee to Robbins, who intervened and, without feedback from the committee declared Dake one of two finalists, *id.* ¶ 39.

On March 2, 2018, at a meeting with Robbins and senior officials of the University, Robbins began the meeting by saying that there was only one finalist he would support and that was Dake. *Id.* ¶ 40. Goldman spoke next, expressing his concerns regarding the process, including that Robbins had unduly and unproperly influenced the search process so that Dake would get the job. . *Id.* ¶ 41He told Robbins that hiring Dake would be the

worst mistake he could make and in the end believed it could very likely cost Robbins his presidency. *Id.*

According to Plaintiff, Goldman made this speech as a whistle blower in an attempt inform senior officials that improprieties had occurred in the hiring of Dake as the SVP for UAHS, the senior-most executive tasked with running the hospital, a large department at a prominent public university with a budget of over $1 billion and over 500 public employees. *Id.* ¶ 42. Robbins got very angry, raised his voice and said: "how do I take it back, as I finally convinced him to apply and in essence have already offered him the job." *Id.* ¶ 43.

Thereafter, Robbins sabotaged the other candidate and hired Dake in March 2018. *Id.* ¶ 46. Robbins told Dake that Plaintiff's husband, Goldman, had been a vocal and firm opponent to Dake, and that Dake had the authority over the Plaintiff, including firing him. *Id.* ¶ 47. Dake refused to promote the Plaintiff formally to fill positions he had been performing for several years on an interim basis without compensation. There were never any criticisms or complaints regarding Plaintiff's job performance. *Id.* ¶ 62. After Plaintiff's husband resigned, Dake told Plaintiff that now he had a decision to make, *id.* ¶ 55, and when Plaintiff wouldn't resign, Dake harassed him, *id.* ¶ 47-48, 55-57, 60-61, and then fired him on June 30, 2019, *id.* ¶ 60-61, in retaliation for Plaintiff's husband's protected conduct, *id.* ¶¶ 47-59.

Before addressing whether the SAC includes factual allegations to support a retaliation First Amendment claim based on the allegedly protected whistle-blower speech by Plaintiff's husband, the Court notes the SAC does not contain allegations of a First Amendment violation based on the right of association. *See* (Order (Doc. 31) at 8-10) (finding First Amendment right of association claim not clearly established). The Court does not revisit its prior determination that there is no clearly established right of association under the First Amendment governing the circumstances of this case.[1]

---

[1] The First Amendment protects two types of association: 1) the right to expressive association is the right to associate with others for the purpose of engaging in speech, assembly, petition for redress of grievances, and exercise of religion, and 2) the right of intimate association protects individual freedom to enter into and maintain certain intimate

- 5 -

The SAC also omits the University as a defendant. In the SAC, the Plaintiff sues only Defendants Robbins and Dake, individually, for compensatory damages. Both Defendants are entitled to the protections of qualified immunity, and a grant of qualified immunity will resolve the case in its entirety. The Court decides this case based on qualified immunity.

### Motion to Dismiss: Qualified Immunity

On a motion to dismiss, this Court takes all well-pleaded factual allegations in the SAC as true, construing them "in the light most favorable to the nonmoving party." *Silvas v. E Trade Mortg. Corp.*, 514 F.3d 1001, 1003 (9th Cir. 2008). After *Iqbal* there is a plausibility requirement, and the Court must determine whether facts alleged in a complaint "give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Dismissal is, therefore, appropriate if the SAC fails to provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678. Plausibility is not the same thing as probability. Plausibility means more than factual assertions that are consistent with the alleged violation; the facts alleged in the SAC must suggest an entitlement to relief. (Order (Doc. 31) at 4 (citations omitted).

### First Amendment Retaliation Claim

"The First Amendment shields public employees from employment retaliation for their protected speech." (Order (Doc.31) at 6 (cleaned up).[2] Generally, in First Amendment

---

human relationships against intrusion by the State. Here, the Plaintiff alleges a violation of the First Amendment right to free speech based on his relationship with the speaker, not an intrusion by the State on the First Amendment protections afforded the right of association. *See Freeman v. Cnty of Riverside,* No. 18-2171-JFW(KKx), 2019 WL 7905733 * 5 (Calif. April 5, 2019) (granting qualified immunity; finding Supreme Court and Ninth Circuit have not definitively extended constitutional protections afforded intimate association within public employment).

[2] "The first [step] requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee [does not have a] First Amendment cause of action based on his . . . employer's reaction to the speech." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). After *Garcetti*, the Court determines first whether "the expressions in question were made by the speaker... upon matters of public concern," and second "whether the state lacked 'adequate justification for treating the employee differently from any other member of the general public.'" *Posey v. Lake Pend Oreille Sch. Dist.* No. 84, 546 F.3d 1121, 1130–31 (9th Cir. 2008) (citing *Garcetti*, 547 U.S. at 416, 418; *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Illinois*, 391 U.S. 563, (1968). "'If the answer [to both questions] is yes, then the possibility of a First Amendment claim arises.'" *Id.* (quoting *Pickering*, 391 U.S. at 418). As noted by the court of appeals,

retaliation cases, the government allegedly retaliated against a person for his own speech, but the First Amendment "'may also be violated where the speech that invoked the government's retaliatory response was not made by the plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with the other person and that person's speech.'" *Freeman v. County of Riverside*, No. 18-2171-JFW(KKx), 2019 WL 7905733 * 6 (Calif. April 5, 2019) (quoting *Lewis v. Eufaula City Bd. of Educ.,* 922 F.Supp.2d 1291, 1302 (Ala. 2012)).

For such a claim, the Plaintiff must show: 1) that the speech at issue (in this case, Plaintiff's husband's objection to hiring Dake) can be fairly characterized as relating to a matter of public concern, 2) that Plaintiff's interests as a citizen outweigh the interests of the governmental entity (the UAHS) as an employer, and 3) that the protected conduct (Plaintiff's husband's speech) played a substantial or motivating role in the government's decision to take an adverse-employment action (firing the Plaintiff). If Plaintiff can make this showing, the Defendants may escape liability if they prove that, regardless of Plaintiff's husband's protected speech, they would have terminated Plaintiff's employment even in the absence of the speech. *Lewis,* 922 F. Supp. 2d at 1304 (citing *Atkins v. Fulton Cnty,* 420 F.3d 1293, 1303 (11th Cir. 2005)).

---

it is a matter of public concern to speak as a whistleblower on cronyism and corruption at UAHS. "Allegations of government misconduct—including the rigging of the executive search process and the mismanagement of a hospital—can constitute protected speech as a matter of public concern." (Decision (Doc. 58-1) at 5-6 ) (citations omitted). In *Garcetti*, the Supreme Court distinguished between speech that is work product and owes its existence to an employee's professional responsibility from contributions to the civil discourse which retain the prospect of constitutional protection for the speaker. *Garcetti*, 547 U.S. at 422.

Under *Garcetti*, the Court answers as a matter of law the question of whether the alleged speech is a matter of public concern, but it is a question of fact: whether the public employee speaks pursuant to his or her official duties or instead speaks as a private citizen. "[W]hen there are genuine and material disputes as to the scope and content of the plaintiff's job responsibilities, the court must reserve judgment on this third prong of the protected status inquiry until after the fact finding process." *Posey*, 546 F.3d at 1131. *See also, Riley's American Heritage Farms v. Elsasser,* 32 F.4th 707, 720, 729 (9th Cir. 2022) (explaining *Pickering* balancing test requires fact-sensitive and deferential weighing of the government's legitimate interests as employer against the First Amendment rights of the speaker-employee that will rarely support a finding that the law was clearly established, therefore, making it difficult for a Plaintiff to overcome a qualified immunity defense). The Court finds the SAC alleges facts raising an inference that Goldman spoke on a matter of public concern and spoke outside the scope and content of his job responsibilities.

- 7 -

As noted by the appellate court, "'[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making.'" (Appellate Opinion (Opinion) (Doc. 58-1) at 6 (quoting *Keates v. Koile,* 883 F.3d 1228, 1234 (9th Cir. 2018)). The "wrinkle" exists because "[o]n the one hand, we may not dismiss a complaint making 'a claim to relief that is plausible on its face.'" *Keates,* 883 F.3d at 1234 (quoting *Iqbal*, 556 U.S. at 678), *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But on the other hand, defendants are entitled to qualified immunity so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* at 1234-35 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is well-established that qualified immunity gives "government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery." *Behrens v. Pelletier*, 516 U.S. 299, 308 (1996). qualified immunity is an immunity from suit, distinct from the merits of the underlying claim. *See also Moss v. U.S. Secret Serv*., 572 F.3d 962, 973 (9th Cir. 2009) (same).

The bar is low for Defendants to secure the protections afforded by qualified immunity. "'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Id.* at 1235 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "Indeed, '[w]hen properly applied,' qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

When dismissing a complaint for failure to state a claim based on a qualified immunity defense, the Court balances the competing interests by allowing the case to go forward "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right.'" (Opinion (Doc. 58-1) at 6-7 (quoting *Keates,* 883 F.3d at 1234 (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco,* 968 F.2d 865, 872 (9th Cir. 1992)).

Accordingly, the SAC must allege facts to support a plausible claim that withstands a qualified immunity defense. *See Keates*, 883 F.3d at 1234. When determining whether a

- 8 -

government official is entitled to qualified immunity, the courts consider two different questions: (1) whether the facts taken in the light most favorable to the party asserting the injury, make out a violation of a constitutional right, and (2) whether the right at issue was "clearly established" at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 971 (9th Cir.2010) (en banc)). The courts may consider the two questions in any logical order. *Pearson v. Callahan*, 555 U.S. at 232.

Here, the Court decides the question of qualified immunity on the narrow determination of whether allegations in the SAC support a claim that the Defendants violated a clearly established constitutional right. The focus of the Court's inquiry is on the objective legal reasonableness of the Defendants' acts. *Eng v. Cooley,* 552 F.3d 1062, 1068 (9th Cir. 2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982)). The Court asks whether it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted. *Saucier*, 533 U.S. at 201. "It is the plaintiff who bears the burden of showing the rights allegedly violated were 'clearly established.'" *Shafer v. County of Santa Barbara,* 868 F.3d 1110, 1118 (9th Cir. 2017).

This Court must determine whether preexisting law at the time the Defendants fired the Plaintiff provided Defendants with "fair warning" that their conduct was unlawful." *Elliot-Park v. Manglona*, 592 F.3d 1003, 1008 (9th Cir. 2010) (quoting *Flores v. Morgan Hill Unified Schs.*, 324 F.3d 1130, 1136–37 (9th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740 (2002)). "To determine whether a right was clearly established, a court turns to the Supreme Court and Ninth Circuit law existing at the time of the alleged act." *Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 967 (9th Cir. 2010).

In the Ninth Circuit, a court must be "hesitant to rely on district court decisions" as clearly establishing law for purposes of qualified immunity. *Evans v. Skolnik*, 997 F.3d 1060, 1067 (9th Cir. 2021). "[A]s the Supreme Court has pointed out, district court decisions—unlike those from the courts of appeals—do not necessarily settle constitutional standards, because a decision of a federal district court judge is not binding precedent in

either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Id.* (alterations and internal quotation marks omitted); *see also S.B. v. County of San Diego*, 864 F.3d 1010, 1016 (9th Cir. 2017) (rejecting the argument that one published and one unpublished district court decision, both factually distinguishable, constituted clearly established law); *Marsh v. County of San Diego*, 680 F.3d 1148, 1159 (9th Cir. 2012) (rejecting the argument that a published federal district court and a published lower state court decision clearly established a right).

Likewise, the court in *DePaul Indus. v. Miller*, 14 F.4th 1021, 1029 (9th Cir. 2021), found the district court erred when it relied on two District of Oregon cases to conclude DePaul had a protected property interest. *DePaul Indus. v. Miller*, 14 F.4th 1021, 1029 (9th Cir. 2021) (validating hesitancy to rely on district court decisions for the qualified immunity analysis). Additionally, the court in *DePaul* explained that even these district court cases were not on-point to a sufficient degree to be persuasive authority. Neither case even mentioned the statute at issue so even if they were binding precedent, neither was sufficient to "place[ ] the statutory or constitutional question" about whether the QRF statute created a protected property interest "beyond debate." *Id.* at 1028-29 (quoting *White v. Pauly*, ––– U.S. ––––, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)).

The Supreme Court "has repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quoting *City and County of San Francisco v. Sheehan*, 135 S. Ct. 1765, 1775-1776 (2015)). The Court has mandated that the "clearly established right must be defined with specificity." *City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) (finding that the Ninth Circuit erred when defining the right, generally, as "the right to be free from excessive force.").

Recently explained in *Hopson v. Alexander*, 71 F.4th 692, 697 (9th Cir. 2023), "clearly established" is a demanding standard that protects "all but the plainly incompetent or those who knowingly violate the law." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589

(2018) (quoting *Malley*, 475 U.S. at 341). "Although a case directly on point is not necessarily required, a rule is only clearly established if it has been settled by controlling authority or a robust consensus of cases of *persuasive authority* that clearly prohibits the officer's conduct in the particular circumstances, with a high degree of specificity." *Hopson*, 71 F.4th at 697 (cleaned up) (emphasis added). "Importantly, we may not 'define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Id.* (citing *Wesby*, 138 S.Ct at 590 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)).

These guideposts, which the Supreme Court has insistently fixed in many cases, have special relevance in this case because the Court considers the defense of qualified immunity on the pleadings, not on summary judgment. In balancing the competing interests of the parties, the Court must allow the case to go forward "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right.'" (Opinion (Doc. 58-1) at 6-7.) Having been so cautioned, the Court turns to the purely legal question of whether the law was clearly established in 2019 to have given fair warning to Defendants that their conduct violated the First Amendment right of free speech.

The Court considers the facts as alleged in the SAC to be true for the purpose of assessing the Defendants' conduct in the particular circumstances of this case. The SAC alleges the following: Plaintiff's husband reported to senior officials of the University that Defendant Robbins unduly influenced the search for the SVP for UAHS; Robins acted contrary to the recommendations of the search committee by improperly hiring his friend Dake, and Dake was not qualified to run the hospital, a large department at a prominent public university with a budget of over $1 billion and over 500 public employees. Plaintiff's husband quit his employment with the University, but Plaintiff remained under the direct supervision of Defendant Dake. Defendant Robbins told Defendant Dake that Plaintiff's husband had spoken in objection to hiring Dake and tried to prevent Robbins

from hiring Dake. Robbins told Dake that Dake had authority over Plaintiff, including the ability to fire him. Dake harassed Plaintiff, told him that his husband had quit and now he had a decision to make, and when Plaintiff refused to resign, Dake fired him.

For purposes of this Order, the Court finds that the SAC alleges Plaintiff's husband's speech was protected under the First Amendment. Whether Defendants are entitled to qualified immunity depends on whether Plaintiff's asserted right to be free from retaliation for the protected speech of his husband was clearly established in 2019. Plaintiff is simply wrong in asserting that it does not matter whether the retaliatory action was taken against Goldman or Goldman's spouse. (Response (Doc. 71) at 18.) The Plaintiff mistakenly defines clearly established law at a high level of generality. It is not enough to show that it is clearly established that the First Amendment prohibits retaliation against an employee who engages in protected speech. The circumstances of the alleged retaliation in this case are different because Plaintiff alleges Defendants retaliated against him in response to protected speech by his husband. These particular facts matter because the Court must determine whether the Defendants acted reasonably in the particular circumstances of the case.

Plaintiff does not need to proffer case law that is identical, but he must show that in light of preexisting law the unlawfulness is apparent. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (finding prior circuit decision holding forms of corporal punishment, including handcuffing inmates to fences or cells for long periods even after need for emergency ended, was constitutionally infirm clearly established it was cruel and unusual punishment to handcuff prisoner to hitching post). Case law, in factual terms, may not be "directly on point," but it must be close enough to have put "the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). "[I]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Oliver v. Fiorino*, 586 F.3d 898, 907 (11th Cir. 2009) (cleaned up). The Court considers "whether the factual scenario that the official faced is fairly distinguishable from the circumstances facing a government official in a previous case." *Loftus v. Clark–Moore*,

690 F.3d 1200, 1204 (11th Cir. 2012)). To make this showing, the Plaintiff may point to prior case law from the Supreme Court of the United States, the Ninth Circuit, or the highest court in the relevant state) that is "materially similar." *Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017) (*citing Jones v. Franse*, 857 F.3d 843, 851–52 (2017)).

The Plaintiff offers no such supporting case law. He proffers out of circuit cases *Adler v. Pataki,* 185 F.3d 35, 44 (2nd Cir. 1999); *Adkins v. Bd. of Educ. of Magoffin Cty., Ky*., 982 F.2d 952, 956 (6th Cir. 1993), and *Sowards v. Loudon County*, 203 F.3d 426, 432–33 (6th Cir. 2000). The plaintiff in *Adler* alleged he was fired in retaliation for a lawsuit filed against state officials by his wife in violation of the First Amendment right of association. The plaintiff in *Adkins* alleged a violation of the First Amendment right of association when the Superintendent of Schools refused to recommend her continued employment after he fired her husband, who refused to follow directives. In *Sowards,* the plaintiff alleged violations of her First Amendment rights of political and intimate association when the Sheriff fired her allegedly because her husband ran against him for Sheriff, and she worked for her husband's campaign. These cases are distinguishable because they are based on the First Amendment right of association, not free speech.

The Court reviewed several cases[3] by the district courts of this circuit, not as persuasive authority, but to see if they provided any insight into the clearly established law in this circuit. The most advantageous for Plaintiff is *Freeman*, 2019 WL 7905733, relying on *Lewis v. Eufaula City Bd. of Educ.,* 922 F.Supp.2d 1291, 1302 (Ala. 2012) and finding the First Amendment prohibition of retaliation against a person for his own speech, extends "where the speech that invoked the government's retaliatory response was not made by the

---

[3] *See* (Response (Doc. 71) at n.5 (citing *Roberts v. Ferry County*, 2008 WL 5121606, at *5 (E.D. Wash. Dec. 5, 2008) (adopting Second Circuit's holding in *Adler* that claims involving adverse action "taken solely against one spouse in retaliation for the other spouse's conduct" are violations of the First Amendment); *Gray v. Bruneau-Grand View Sch. Dist. No. 365*, 2007 WL 1381785, at *1 & n.2 (D. Idaho Mar. 27, 2007) (plaintiff's "association with her husband is an intimate association entitled to protection under the First Amendment" such that plaintiff's husband's "criticizing [plaintiff's employer's] officials and their policies" "could not reasonably be found to justify" adverse employment action against her (citation omitted)); *Cain v. Tigard–Tualatin Sch. Dist*. 23J, 262 F. Supp. 2d 1120, 1127 (D. Or. 2003) (upholding claim based on defendant's retaliatory conduct towards child for parents' speech, who spoke on his behalf)).

plaintiff [], but rather by a person in a close relationship with the plaintiff, and the government retaliated against the plaintiff for [his] perceived association with the other person and that person's speech.'" Subsequent to *Eufaula,* however, the Eleventh Circuit considered a claim in *Gaines v. Wardynski,* 871 F.3d 1203 (11th Cir. 2017), where Gaines alleged that she was passed over for a promotion because her father had criticized the Superintendent and the School Board about a matter of public concern in violation of the First Amendment.

First, the court explained that it is a rarity for an issue to be "'so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful," or where the case law that does exist is so clear and broad (and 'not tied to particularized facts') that 'every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.'" *Id.* at 1209 (quoting *Vinyard v. Wilson*, 311 F.3d 1340, 1350-51 (11th Cir. 2017)). The Court agrees and rejects the Plaintiff's reliance on the broader, clearly established First Amendment principles that apply generally to preclude retaliatory conduct against a person who has exercised his right to speak or any suggestion that the conduct involved in this case was so obviously violative of the constitution that prior case law is unnecessary.

Like the Plaintiff in this case, the plaintiff in *Gaines* found *Thompson v. N. Am. Stainless, L*), 562 U.S. 170, 173(2011) a Title VII case where the Supreme Court had little difficulty concluding that if plaintiff could prove the allegations that defendant terminated his employment in retaliation for his fiancée's filing a charge with the EEOC, then defendant's firing violated Title VII. The court in *Gaines* explained that under Title VII filing an EEOC complaint is a protected activity, protections are not always the same as between Title VI and the Constitution, *Thompson* is not a First Amendment case, and *Thompson* does not constitute clearly established First Amendment law. *Gaines*, 871 F.3d at 1210. The Court agrees.

The court in *Gaines* noted that *Eufaula City Bd. of Ed.* relied in part on *Thompson,* but more importantly a district court case cannot clearly establish the law for qualified immunity purposes. *Id.* at 1212. Again, the Court agrees.

The Court returns to the findings in *Freeman* by the California district court. Plaintiff, a deputy sheriff, was married to an investigator at the County Attorney's Office, who posted criticisms of the Sheriff on Facebook. The Sheriff allegedly attempted to silence the husband by taking adverse actions against the wife. Plaintiff alleged the Sheriff prevented her promotion because of her association with her husband and in retaliation for her husband's speech. The court in *Freeman* granted qualified immunity finding the law was not clearly established for the First Amendment right of association claim. It did not apply qualified immunity to the First Amendment retaliation claim. The *Freeman* court held "there are cases recognizing a cause of action where an individual has suffered retaliation for his or her perceived association with the speech of a close family member." *Freeman,* 2019 WL 7905733 *5 (citing *Biggs v. Best, Best & Krieger,* 189 F.3d 989 (9th Cir. 1999)).

The *Biggs* case involved circumstances where the wife worked for a law firm representing the City, who joined her husband and daughter in political activities that were contrary to certain City Council members' interests, who complained and objected to her representation resulting in her being fired by her law firm. The Biggs family sued for violations of the First Amendment. *Biggs* does not help the Plaintiff because it was decided under a narrow exception to First Amendment protections when an employee occupies a policymaking or confidential position. *Fazio v. City & County of San Francisco*, 125 F.3d 1328, 1332 (9th Cir.1997). Ms. Biggs held a policy making position, and the court decided the case under *Fazio,* "which made clear that an employee's status as a policymaking or confidential employee would be dispositive of any First Amendment retaliation claim." *Biggs*, 189 F.3d at 995. In *Biggs*, the court assumed "she was a public employee who was clearly able to assert a First Amendment section 1983 claim." *Id.*

Conclusion

The Plaintiff fails to produce, and the Court has found no persuasive law that clearly establishes that a First Amendment retaliation claim may be made by one person for the protected speech of another person based on a close personal relationship between the two. The Court finds the SAC does not contain even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right. On its face, the SAC fails to allege a plausible First Amendment retaliation claim based on speech. Amendment of the SAC would be futile because as a matter of law, the Plaintiff cannot allege facts to support a plausible claim that withstands a qualified immunity defense.

**Accordingly,**

**IT IS ORDERED** that the Motion to Dismiss (Doc. 67) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment accordingly.

Dated this 24th day of August, 2023.

Honorable Cindy K. Jorgenson
United States District Judge